STATE ex rel. SIKESTON R–VI SCHOOL
DISTRICT, Missouri State Teachers As-
sociation, et al., Relators,

v.

John ASHCROFT, et al., Respondents,

Robert Buchanan, Sr.,
et al., Intervenors.

MISSOURI NATIONAL EDUCATION
ASSOCIATION, et al., Relators,

v.

John ASHCROFT, et al., Respondents,

Robert Buchanan, Sr.,
et al., Intervenors.

No. 74523.

Supreme Court of Missouri,
En Banc.

March 10, 1992.

As Modified April 21, 1992.

William L. Webster, Atty. Gen., Curtis F.
Thompson and Audrey L. Hanson, Asst.
Attys. Gen., Jefferson City, for appel-
lants/cross-respondents.

Joseph J. Russell and Diane C. Howard,
Cape Girardeau, for intervenors/cross-ap-
pellants.

Arthur J. Martin, Charles A. Werner and
Lisa S. Van Amburg, St. Louis, for respon-
dents/cross-appellants Missouri Nat. Educ.
Ass'n.

Michael A. Dallmeyer and Hallie H.
Gibbs, II, Jefferson City, for rela-
tors/cross-appellants Sikeston School Dist.

Steven L. Wright, Gen. Counsel and Ra-
nada Vinyard, Columbia, for amicus curiae
Missouri School Boards Ass'n.

ROBERTSON, Chief Justice.

That the government of the State of Missouri confronts economically difficult times is a fact hidden only from the most eremitic of citizens. In response to federal court desegregation orders requiring the expenditure of over $350,000,000 for desegregation in the Kansas City and St. Louis metropolitan areas, the Governor expressed an intention not to distribute over $75,000,000 appropriated by the General Assembly for distribution to the "free public schools" of Missouri through the state's school foundation formula. Section 163.011, *et seq.*, RSMo 1986. The relators in this case, school districts, students, parents, and educators, contend that the Governor was without power to "withhold" these funds from the public schools under Article IV, sections 26 and 27 and Article IX, section 3(a) of the Missouri Constitution.

The trial court issued its peremptory writ of mandamus directing the Governor to release a portion of the funds withheld from the public schools. The trial court refused to make its preliminary writ of mandamus peremptory as to other public school funds withheld by the Governor.

For the reasons following we hold that mandamus will not lie to order the Governor to restore funds withheld from expenditure by the free public schools. The judgment of the trial court is reversed. The cause is remanded with directions to quash the peremptory writ of mandamus previously entered by the trial court.

## I.

The constitution requires the Governor to submit a budget to the General Assembly within thirty days of the convening of the legislature in regular session. Mo. Const. art. IV, § 24. The Governor's budget must contain "the estimated available revenues of the state." *Id.*

On January 15, 1991, Governor Ashcroft submitted his budget to the General Assembly for fiscal year 1992 (FY92), which began July 1, 1991. That budget estimated the state's available general revenue for FY92 at $4,604,244,811. The General Assembly passed and submitted to the Governor for his approval appropriation bills totalling $4,215,088,592. These appropriation bills did not include any appropriation for federal court ordered desegregation costs in St. Louis and Kansas City. The Governor estimated those "off-the-books" desegregation costs for FY92 at $287,300,000.

By June 27, 1991, the executive branch estimates of revenue available to the state for FY92 had diminished to approximately $4,328,600,000 as a result of reduced economic activity within the state. For purposes of his budget balancing calculations, the Governor assumed that general revenue ordered spent for desegregation costs by the federal judiciary was not available revenue for appropriation purposes. To balance the state's budget, the Governor vetoed $49,800,000 from the appropriation bills passed by the General Assembly. The Governor also announced that he would "withhold" an additional $150,500,000 in general revenue appropriations for FY92, including approximately $40,500,000 in expenditures for the free public schools. The Governor ordered the withholding to the public schools effective January 1, 1992; all other withholdings took effect July 1, 1991.

The Governor's actions are more easily grasped if shown graphically. On June 27, 1991, this was the state's financial/budget position according to the Governor.

| | | |
|---|---:|---:|
| Governor's Total Resource Estimate (June 27, 1991) | 4,378,600,000 | |
| Desegregation Costs (Estimate) | −287,300,000 | |
| Tax Refunds (Estimate) | −391,700,000 | |
| Resources Available for Appropriation | | 3,699,600,000 |
| Appropriations Passed (without tax refunds) | 3,837,100,000 | |
| Reserve for Supplemental Appropriations | 45,700,000 | |
| Statutory 3% Reserve for Minor End-of-Year Shortfalls | 33,000,000 | |

| | |
|---|---|
| Available Resources Needed to Balance Budget | 3,915,800,000 |
| Shortfall | −216,200,000 |

These were the actions the Governor took to fashion a balanced budget.

| | |
|---|---|
| Vetoes | 49,800,000 |
| Withholdings (July 1, 1991) | 110,000,000 |
| Withholdings (January 1, 1992) | 40,500,000 |
| Expansion of Donated Funds | 16,000,000 |
| Total | 216,300,000 |

On August 23, 1991, Federal District Judge Russell Clark ordered the state to pay an additional $71,400,000 in desegregation costs for the Kansas City school desegregation case. The Governor responded by announcing additional withholdings of $71,400,000 from state appropriations. This amount included an additional withholding of $34,488,807, from the public schools, again effective January 1, 1992.

On September 25, 1991, the Missouri National Education Association (the MNEA) and four officers of that organization filed a Petition in Mandamus in the Circuit Court of Cole County against the Governor and other executive branch officers as respondents. On September 27, 1991, the Sikeston R–VI School District, the Grundy R–IX School District, the Doniphan R–I School System and the Missouri State Teachers Association (the Sikeston relators) filed an Application for Preliminary and Permanent Writs in Mandamus or Prohibition in the Circuit Court of Cole County. The MNEA and Sikeston writs of mandamus sought to compel the Governor to perform the ministerial act of expending all funds appropriated to the public schools and to order disbursement of those funds in accordance with the foundation formula. Section 163.011, *et seq.*, RSMo 1986.

The MNEA and Sikeston mandamus petitions were consolidated. On November 18, 1991, the trial court permitted the Richland R–I Public School District, the Dexter R–XI Public School District, the Scott County Central Public School District, the Caruthersville Public School District, four school superintendents, seven taxpayers/parents, four students of the school districts and the Southeast Missouri Superintendent's Association to intervene as relators. Following hearing, the trial court issued written findings of fact and conclusions of law. The trial court concluded that the "the first withholding in this case is within the discretion of the Governor under Article IV, section 27 of the Missouri Constitution and will not be disturbed by the Court." The trial court also concluded that the second withholding "was not the result of a revenue shortfall and therefore is violative of Article IV, section 27 of the Missouri Constitution." Thus, as to the second withholding, the trial court entered its order directing respondents "to allocate funds appropriated by the General Assembly of the State of Missouri for free public schools during FY 1992 that were subject to the Governor's second withholding from the School Fund to take effect in January, 1992, in the total amount of $34,488,807.00."

Relators and respondents appealed. This Court granted expedited review of the important issues raised by the parties.

II.

The Missouri Constitution provides specific direction on the manner in which funds deposited in the state treasury may be spent. Article IV, section 15, commands that "[i]mmediately upon receipt of state or United States funds the state treasurer shall deposit all moneys in the state treasury." Article III, section 36, expressly denies the General Assembly the power to expend state funds without an appropriation. "All revenue collected and money received by the state shall go into the trea-

sury and the general assembly shall have no power to divert the same or to permit the withdrawal of money from the treasury, except in pursuance of appropriations made by law." *Id.*

An appropriation is the legal authorization to expend funds from the treasury; that legal authorization requires not only the approval of the majority of the members of both houses of the legislature but also the approval of the Governor. The constitution grants the Governor general line item veto power over appropriations, subject to specific limitations discussed below and subject to override by a two-thirds vote of the legislature. Mo. Const. art. III, § 32.

The Missouri Constitution speaks of the importance Missourians place on education. "A general diffusion of knowledge and intelligence [is] essential to the preservation of the rights and liberties of the people." Mo. Const. art. IX, § 1. The General Assembly is required to "establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law." *Id.*

To further this vital interest, the state constitution sets a minimum appropriation from state revenue for the public schools. "[I]n no case shall there be set apart less than twenty-five percent of the state revenue, exclusive of interest and sinking fund, to be applied annually to the support of the free public schools." Mo. Const. art. IX, § 3(b). The constitution also mandates that *"[a]ll appropriations by the state for the support of free public schools and the income from the public school fund shall be paid at least annually and distributed according to law."* [Emphasis added.] Mo. Const. art. IX, § 3(a). And in recognition of the importance of education, the Governor's line item veto expressly precludes the authority to "reduce any appropriation for free public schools." Mo. Const. art. IV, § 26.

The people of Missouri also have a vital interest in government living within its means. As previously discussed, the Governor is granted broad authority to veto all or parts of appropriations, except, of course, appropriations to the public schools and for payment of the public debt. Mo. Const. art. IV, § 26. While the gubernatorial veto power permits vetoes for other than financial reasons, the line item veto is a powerful budget balancing tool. Article IV, section 27, broadly authorizes the Governor to balance the state's budget in the event that state revenues fall below the revenue expectations. "The Governor ... may reduce the expenditures of the state or any of its agencies *below their appropriations* whenever actual revenues are less than the revenue estimates upon which appropriations are based." [Emphasis added.] Mo. Const. art. IV, § 27.

The school relators argue that, read together, these constitutional provisions deny the Governor the authority to reduce the expenditure of funds appropriated to the public schools in the event of a revenue shortfall. In sum relators argue that the people intended Article IV, section 26 and Article IX, section 3(a), as a limit on the Governor's power under Article IV, section 27, to use school appropriations to balance the budget by reducing public school expenditures below appropriations when actual state revenues are below projections. Thus, they contend that the Governor's budget balancing power does not extend to expenditures for the public schools. The school relators' arguments are founded on their belief that the constitution places expenditures for public schools ahead of all other financial needs of state government.

Respondents urge that Article IV, section 27, vests the Governor with authority to reduce the expenditures for all appropriations, including those to the public schools. Implicit in the respondents' position is the conviction that the people of Missouri value a balanced budget above all other financial obligations of state government.

Under any argument, however, the question of the propriety of the Governor's order to reduce state expenditures is ripe for adjudication only where there is a factual showing that actual state revenues have fallen below revenue estimates and the

Governor has reduced the expenditures below the amount appropriated.

In this case the parties have stipulated that the state had received $1,612,500,000 in general revenue by November 30, 1991, and that the revenue expected and estimated by that date was $1,736,700,000, a shortfall of $124,200,400. All parties assume, moreover, that the Governor's order to "withhold" $75,010,607 of the amount appropriated by the General Assembly to the public schools constitutes an order to reduce the expenditures of the state for public education within the meaning of Article IV, section 27. For the reasons that follow, this assumption is constitutionally incorrect.

The question presented in this case by the parties is difficult enough under a factual scenario that does not stray from the constitutional structure for appropriating and spending state funds. But that structure is not in place under the facts of this case. Indeed, the structure of state expenditures and constitutional checks upon the legislative and executive branches of state government adopted by the people of Missouri in 1945 never imagined that federal courts could command a payment to specific public schools in this state exceeding $350,000,000 annually without an appropriation by the General Assembly. The state constitutional imperatives under which state government normally expends funds in the state treasury have been tossed aside by the hand of the federal judiciary reaching into the state treasury gloved in the authority of the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

We cannot discard the state constitution so lightly, however. To the extent possible under these facts, we are required to decide this case as though state constitutional mandates have been followed and state constitutional requirements met. To do otherwise would be to place this state Court above the state constitution. We are not willing to assume that imperial role.

We begin with this proposition: The public schools of Kansas City, Missouri, the City of St. Louis and St. Louis County are free public schools within the meaning of Article IV, section 26 and Article IX, section 3(a). The federal court orders requiring state expenditures for desegregation purposes in those public schools are state expenditures for those schools. It necessarily follows that such expenditures are state expenditures for free public schools.

The General Assembly appropriated $1,140,560,000 for distribution to the free public schools of Missouri. It appropriated nothing for desegregation expenditures ordered by the federal judiciary. Although speculation permits one to assume a contrary intention, the only constitutionally cognizable conclusion this Court can draw under *these* facts is that the General Assembly appropriated and intended for the state to expend and distribute $1,140,560,000 for the free public schools. That amount was not subject to veto, nor did it suffer any veto.

■ The constitution offers no mandate that funds appropriated to the free public schools be expended exclusively through the foundation formula. The constitution says only that funds appropriated to the public schools "be distributed according to law." Art. IX, § 3(a). One such law is the foundation formula adopted by the General Assembly; another such law is the United States Constitution.

The federal court desegregation orders at issue here claim legitimacy under the Fourteenth Amendment to the United States Constitution as interpreted by members of the federal judiciary. The United States Constitution is the "supreme law of the land." U.S. Const. art. VI, cl. 2. For purposes of Article IX, section 3(a) of the Missouri Constitution, the federal constitution is a law which can direct the distribution of state funds to public schools.

The General Assembly stated in its appropriation that $1,140,560,000 in state funds be spent on the public schools. The desegregation payments ordered by the federal court are expenditures of state funds for the public schools. Because desegregation expenditures are for the public schools, they are part of the funds expended by the state on the public schools.

Relators in this case have failed to show that the Governor's actions will result in the public schools of this state, *taken together*, receiving less than the amount appropriated by the General Assembly for the free public schools. While we do not deny that *individual districts* will suffer mightily at the redistribution of the state's education moneys caused by the federal court, relators in this case have not shown that the Governor has reduced the total expenditures of the state for public schools below the appropriations approved for that purpose.

■ Mandamus will issue only where there is an unequivocal showing that the respondent has failed to perform a ministerial duty imposed by law. There is no failure of respondents here to perform a ministerial duty because the public schools have received all of the money appropriated to them by the General Assembly. Until such time as actual expenditures for the public schools fall below the appropriated amount, mandamus is an inappropriate remedy by which to consider whether Article IV, section 26 and Article IX, section 3(a) limit the Governor's use of the Article IV, section 27, power as to appropriations to the public schools.

### III.

The judgment of the trial court is reversed. The cause is remanded to the trial court for entry of an order quashing the peremptory writ previously issued in this case.

All concur.