**GENERAL MILLS RESTAURANTS, INC., Appellant,**

v.

**Johnny CLEMONS, Appellee.**

**No. 13–91–427–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 25, 1993.

Andrew T. McKinney IV, Phillips & Akers, Houston, for appellant.

James S. Walker, Edward H. Green, Gottesman, McAllister & Kirk, Jerome Gottesman, Houston, for appellee.

John D. Wittenmyer, LeBoeuf & Wittenmyer, Angleton, for intervenor.

Before NYE, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

OPINION

GILBERTO HINOJOSA, Justice.

This is a personal injury case in which a jury found that appellant, General Mills Restaurants, Inc. (General Mills), was grossly negligent in maintaining a delivery ramp at one of its Red Lobster restaurants which proximately caused Johnny Clemons, a Brinks messenger, to suffer damages. The trial court entered judgment accordingly awarding Clemons compensatory and exemplary damages. We affirm.

General Mills originally presented ten points of error for our review. However, after General Mills received Clemons' appellate brief, it filed a Notice of Limitation of Appeal with this court. By this notice it sought to limit its appeal and asked that we afford it only the relief requested relating to points of error seven through ten. The notice was unopposed. At oral argument, General Mills' attorney again reiterated that it was eliminating from our consideration points of error one through six. Thus, we only review points seven through ten complaining about the gross negligence finding and the awarding of exemplary damages.

This is a slip and fall case in which Clemons alleged and the jury found that a negligently maintained sloped platform at a rear service delivery entrance to a Red Lobster restaurant caused him to suffer injuries and damages. By points of error seven and eight, General Mills contends that the evidence is legally and factually insufficient to support the jury's finding that it was grossly negligent.

■ Gross negligence, to be the basis for an exemplary damage award, should be that entire want of care which would raise the belief that the act or omission complained about was the result of conscious indifference to the right or welfare of the person or persons to be affected by it. *Aluminum Co. of Am. v. Alm*, 785 S.W.2d 137, 140 (Tex.), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990). "Conscious indiffer-

ence" denotes a decision, in the face of impending harm to another party, to not care about the consequences of the act which may ultimately lead to that harm. *Terminix, Inc. v. Right Away Foods Corp.*, 771 S.W.2d 675, 681 (Tex.App.—Corpus Christi 1989, writ denied) (citing *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex.1985)). In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he did not care. *Alm*, 785 S.W.2d at 140 (citing *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981)); *Owens v. Watson*, 806 S.W.2d 871, 874 (Tex. App.—Corpus Christi 1991, writ denied). Mental state may be inferred from actions. *Terminix, Inc.*, 771 S.W.2d at 681.

■ When a jury finds that a defendant was grossly negligent, on appeal, the defendant has the burden of showing that there is no evidence to support the jury's finding. *Burk Royalty Co.*, 616 S.W.2d at 920-21. We must look to all actions or circumstances indicating a state of mind amounting to a conscious indifference when determining whether there is some evidence of the jury's finding of gross negligence. *Owens*, 806 S.W.2d at 874 (citing *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex.1985)). We must view all of the evidence in the light most favorable to the jury's verdict and every reasonable inference deducible from the evidence is to be indulged in favor of Clemons. *Burk Royalty Co.*, 616 S.W.2d at 922.

■ When we review a point of error asserting that the evidence is factually insufficient, we will review all of the evidence presented to the factfinder. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *In Re King's Estate*, 244 S.W.2d 660, 662 (Tex. 1951). We will reverse only when the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool*, 715 S.W.2d at 635; *In Re King's Estate*, 244 S.W.2d at 662.

Clemons testified at trial. Clemons explained that he worked for Brinks, Incorporated of Texas, a company that picked up and delivered bank deposits for businesses. Clemons and his partner arrived in a compa-

ny truck at the Red Lobster about 9:40–9:45 a.m. Clemons explained that generally, Brinks messengers go to the front door of the restaurant to pick up deposits. However, if there is no answer at the front door, then they go to the back door. On the day Clemons fell, there was no answer at the front door so the Brinks truck went to the back door. Clemons went inside to pick up the deposit. As he was leaving he opened the back door, looked down to see where he was stepping, and looked up again to see where he was going, and then fell. He stated that while he sat on the ramp for a few minutes Robin Andrews, the manager on duty, came out to see what had occurred. Clemons testified that Andrews told him "well, if you got hurt say you got hurt somewhere else." Clemons then noticed that his feet were swelling badly. He asked Andrews to make a report and give him a copy to take back to Brinks "in case something developed." At trial, when Clemons was asked what he thought caused his fall, he stated that he really did not know. He said that he did not have time to examine the ramp because he was in pain. When asked if there were any foreign substances on the ramp he stated again that he did not examine it because he was in pain. Clemons testified that in the past when he had entered through the back entrance of the Red Lobster he had noticed things such as "lettuce or tomato or something on the ramp before."

Although Andrews did not testify at trial, portions of his deposition were read into evidence. Andrews recalled the accident as occurring when Clemons came to pick up the deposit for the restaurant. As Clemons was leaving he stepped off the back stoop onto the ramp, slid down, and landed on his leg. Immediately after Clemons fell, Andrews completed an accident report. In the "remarks" area of the accident report, Andrews noted that the ramp needed to be sloped differently because it was too steep. Andrews also stated by deposition that before Clemons' fall he had slid down the ramp and fallen himself once before but that it was just a "sit-down type thing and there was no pain or anything." Andrews stated that he believed the slope on the ramp was too steep because anyone wearing regularly soled shoes could slide down the ramp. When asked about the condition of the ramp on the day Clemons fell, Andrews stated that he did not remember there being any other condition on the ramp that would have contributed to Clemons' fall. When asked if the ramp could have been oily or greasy, Andrews stated that was probably not the case because Clemons had come to the restaurant in the morning and the ramp was cleaned every night.

Sam Brown was qualified as an expert and testified at trial. Brown testified that the ramp did not meet the standards of the City of Houston Building Code.

■ We conclude that the facts recited above are sufficient to show that there was evidence that the defendant was aware of the condition of the ramp, and also, that the evidence is factually sufficient to support the jury's finding. Andrews had fallen some time before Clemons' fall and therefore the jury could have deduced that he was aware of the ramp's condition and potential for harm. The jury could have concluded from Andrews' own experience that General Mills was aware of the steepness of the ramp and its potential for injury and consciously disregarded this condition. We overrule points seven and eight.

By points nine and ten, General Mills contends that the evidence is legally and factually insufficient to support the jury's finding that Clemons recover $50,000 as exemplary damages.

■ When reviewing an exemplary damage award, the standard of review is factual sufficiency. *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.1986). Actual damages are used to indicate the reasonableness of exemplary damages under the rule that punitive damages must be rationally related to actual damages. *Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712, 714 (Tex.1987). The ratio is a tool to assist courts in determining when an exemplary damage award is the product of passion rather than reason. *Id.* There is however, no exact ratio by which punitive damages are measured to actual damages. *Tatum v. Preston Carter Co.,* 702 S.W.2d 186, 188 (Tex.1986). In addition to

noting the ratio of punitive damages to actual damages, we consider 1) the nature of the wrong, 2) the character of the defendant's conduct, 3) the degree of the defendant's culpability, 4) the situation and sensibility of the parties, and 5) the extent to which the conduct offends the public sense of justice and propriety. *Id.; Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

■ We conclude, when considering the above factors and the evidence presented, that factually sufficient evidence supports the jury's award. We note that the jury awarded Clemons $38,000 as compensatory damages. We do not find the award of exemplary damages in the sum of $50,000 to be excessive when compared with the compensatory damages sum. We will not disturb the jury's finding. We overrule points nine and ten. We affirm the trial court's judgment.