Jacob Allen **BLACKMON**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 10–94–356–CR.

Court of Appeals of Texas,
Waco.

July 10, 1996.

Rehearing Overruled Aug. 7, 1996.

John M. Hurley, Waco, for appellant.

John W. Segrest, Criminal Dist. Atty., Crawford Long, Antonio Y. Pina, Asst. Dist. Attys., Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Christopher Schumacher was shot and killed on the morning of January 20, 1994, as he fled from his killer's demands for money and cigarettes. A jury found sixteen year old Jacob Blackmon guilty of this capital murder and, because the State had not sought the death penalty, his punishment was automatically assessed at life imprisonment. TEX.PENAL CODE ANN. §§ 12.31(a), 19.03 (Vernon 1994). In seven points of error, he challenges the factual sufficiency of the evidence; argues that the court erred when it overruled his motion for a new trial, which was premised on newly discovered evidence and his claim that the State knowingly used perjured testimony; asserts that the court erred when it failed to suppress his custodial statement; and attacks the court's failure to include an instruction on self-defense in the jury charge. By one supplemental point of error he argues that his sentence is void because he was fifteen years old at the time of the offense. We affirm his conviction.

Early in the morning of January 20, 1994, Christopher Schumacher and his brother Jacob, both students at Baylor University, were accosted by three juveniles while the brothers were walking home from a night club. After the men demanded Christopher's money and cigarettes, he attempted to flee. One of the occupants of the car got out, followed the brothers a short distance and then fatally shot Christopher in the back with a .22 caliber rifle. Christopher died within forty-five seconds of the shooting, with his brother kneeling beside him, in an apartment complex parking lot. Although Jacob attempted to describe his brother's murderer to the police, his description was not adequate for the police to identify a suspect.

However, the police were able to find the car that was used in the crime. On February 21, Detective Jerry Wilson of the Waco Police Department interviewed the car's owner, Timothy Crosslin, at the McLennan County Jail. Initially, Crosslin denied any involvement in or knowledge of the murder, but ultimately told Wilson that he was the driver of the car and Blackmon, his younger half-brother, was the killer. Wilson took Blackmon into custody that day and, because Blackmon was only 15 years old, delivered him to the juvenile detention center. Several days later, during an interview at the Waco police station, Blackmon confessed to his role in the killing and signed a written statement detailing the events.

FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first point, Blackmon argues that the jury's verdict is against the great weight and preponderance of the evidence. *Clewis v. State*, 922 S.W.2d 126, 128–29 (Tex. Crim.App.1996). In resolving this point, we view all of the evidence without the "in the light most favorable to the prosecution" prism and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*; *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). Blackmon argues that we should consider the evidence presented at the hearing on his motion for a new trial in this sufficiency review. However, we are evaluating the sufficiency of the evidence to support the jury's findings; thus, we consider only the evidence presented before the jury and not that presented after the verdict to the court. *See General Mills Restaurants v. Clemons*, 865 S.W.2d 48, 50 (Tex.App.—Corpus Christi 1993, no writ) ("we will review all of the evidence presented to the fact finder."); *Khalaf v. Williams*, 814 S.W.2d 854, 857 (Tex.App.—Houston [1st Dist.] 1991, no writ) ("[The] appellate court should consider and weigh all evidence before the jury.").

The primary evidence supporting the jury's verdict comes from three sources: Jacob Schumacher's testimony describing the events leading up to his brother's death, Blackmon's statement, and Crosslin's testi-

mony. In his statement, Blackmon confessed that he shot Christopher Schumacher after Schumacher refused to surrender his money and cigarettes. Crosslin testified that Blackmon shot Schumacher as he ran away from Blackmon. Jacob Schumacher's testimony is, on the whole, consistent with the two perpetrators' rendition of the events. The principle evidence contrary to the jury's verdict is Blackmon's testimony, in which he repudiated his statement and claimed that another man, Tim Stone, was the killer. Other evidence adduced by the defense may serve to undermine the credibility of the witnesses and the accuracy of their trial testimony. However, the jury's verdict is not contrary to the ordinary weight of the evidence, much less contrary to the overwhelming weight of the evidence. *Clewis*, 922 S.W.2d at 128–29; *Stone*, 823 S.W.2d at 381. Thus, the evidence presented at trial is factually sufficient to support the jury's verdict. We overrule point one.

MOTION FOR A NEW TRIAL

Blackmon's second and third points attack the court's ruling on his motion for a new trial. In point two, he argues that the court should have granted a new trial because the State knowingly relied on perjured testimony at his trial. "[T]he State violates a defendant's right to due process when it actively or passively uses perjured testimony to obtain a conviction. [citations omitted.] Such a violation occurs whenever the prosecutor has actual or imputed knowledge of the perjury." *Ex parte Castellano*, 863 S.W.2d 476, 481 (Tex.Crim.App.1993); *see also Ex parte Adams*, 768 S.W.2d 281 (Tex.Crim.App.1989). At the hearing on Blackmon's motion for a new trial, Crosslin recanted his trial testimony and stated that Stone, not Blackmon, actually killed Schumacher. Crosslin claimed that he was forced to testify falsely at trial because of threats by the police to prosecute him for capital murder and to prosecute his mother as an accomplice to the crime. However, the police detective who interrogated Crosslin denied threatening to prosecute Crosslin's mother.

The trial judge is the trier of fact at a hearing on a motion for a new trial. *Lewis*

*v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). Where there is conflicting evidence, the court does not abuse its discretion in overruling the motion. *Id.* Additionally, where an accomplice recants his trial testimony, his recantation may be dismissed. *Villarreal v. State,* 788 S.W.2d 672, 674 (Tex. App.—Corpus Christi 1990, pet. ref'd). Thus, the court was entitled to find that no threats were made or that Crosslin's trial testimony was not false, and we will not find that he abused his discretion in rejecting Blackmon's theory on either ground. *Lewis,* 911 S.W.2d at 7; *see also Drew v. State,* 743 S.W.2d 207, 228 (Tex.Crim.App.1987) (courts view recanting accomplice's testimony "with extreme suspicion."). We overrule point two.

 Blackmon also claimed that he had discovered new evidence favorable to his defense which entitled him to a new trial. Tex. Code Crim.Proc.Ann. art. 40.001 (Vernon Supp.1996). He complains in his third point that the court rejected this theory. To show that the trial court abused its discretion in not granting Blackmon a new trial based on newly discovered evidence, the record must reflect that: (1) the newly discovered evidence was unknown to Blackmon at the time of trial; (2) his failure to discover the evidence was not due to his want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *Ashcraft v. State,* 918 S.W.2d 648, 653 (Tex.App.—Waco 1996, pet. ref'd) (citing *Moore v. State,* 882 S.W.2d 844, 849 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *State v. Gonzalez,* 855 S.W.2d 692, 697 n. 1 (Tex.Crim.App.1993) (Meyers, J., concurring); *Eddlemon v. State,* 591 S.W.2d 847, 849 (Tex.Crim.App. [Panel Op.] 1979)).

At the motion for a new trial hearing, Blackmon produced testimony regarding a statement made by Crosslin at the end of January 1994. The new witness testified that Crosslin:

> stated that they had pulled up on to a Baylor student and told him to give them the money that he had, and there was somebody else with him, I—I'm not sure. And the person tried to run and they said, 'Don't run or we'll shoot you,' and he kept on going and he got shot, and after he had said that, he said, 'Jake's stupid butt was asleep.'

Blackmon inferred that this evidence indicated that he could not have been the shooter because he was asleep at the time of the murder. He argues that this evidence contradicts Crosslin's trial testimony.

The State correctly points out that this evidence is hearsay, admissible only for impeachment. Tex.R.Crim.Evid. 612, 801, 802. Thus, the newly discovered evidence offered by Blackmon is merely impeaching evidence, and the court did not abuse its discretion in denying him a new trial on this theory. *Jones v. State,* 711 S.W.2d 35, 40 (Tex.Crim. App.1986); *Ashcraft,* 918 S.W.2d at 653. We overrule point three.

MOTION TO SUPPRESS BLACKMON'S STATEMENT

Blackmon's next three points relate to his motion to suppress his statement. Blackmon sought to have his statement suppressed claiming that the officers did not have probable cause to detain him, that his custody violated his constitutional right to equal protection, and that the police did not have the authority to interrogate him at the Waco Police station. After a hearing, the court denied his motion.

 The trial court is the judge of the credibility and weight of the testimony at a suppression hearing. *Banda v. State,* 890 S.W.2d 42, 51–52 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). Thus, we do not engage in a factual determination ourselves; rather, we determine if the court's implied findings are supported by the record. *Id.; Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim.App. 1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). If those findings are supported by the record, we consider only if the court erred in applying the law to the facts. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

 In point four, Blackmon attacks the court's implied finding that the police had

probable cause to detain him. "Probable cause exists 'when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not,' a particular suspect has committed an offense." *Hughes v. State*, 878 S.W.2d 142, 154 (Tex.Crim.App. 1992) (on rehearing) (quoting *Castillo v. State*, 818 S.W.2d 803, 805 n. 4 (Tex.Crim. App.1991)). Detective Wilson, the officer who detained Blackmon, testified that he took him into custody based on Crosslin's statement implicating Crosslin and Blackmon in the murder. Many of the facts in Crosslin's statement fit within the facts told to Wilson by Jacob Schumacher. We conclude that the record supports a finding that Wilson had probable cause to detain Blackmon for the murder of Christopher Schumacher, and the court did not err in rejecting this ground of his motion. *Id.*; *Banda*, 890 S.W.2d at 51–52; *Romero*, 800 S.W.2d at 543. Point four is overruled.

 Wilson detained Blackmon without a warrant. His authority for the detention was grounded on Blackmon's age because "[a] child may be taken into custody by a law-enforcement officer ... if there is probable cause to believe that the child has engaged in conduct that violates a penal law of this state ..." TEX.FAM.CODE ANN. § 52.01(a)(3)(A) (Vernon 1996). Thus, no arrest warrant was necessary. *Id.*; *Cornealius v. State*, 900 S.W.2d 731, 733 (Tex.Crim.App. 1995); *Vasquez v. State*, 739 S.W.2d 37, 41–42 (Tex.Crim.App.1987), *reh'g denied*, 816 S.W.2d 750 (Tex.Crim.App.1991); *see also Lanes v. State*, 767 S.W.2d 789, 801 (Tex. Crim.App.1989). In his fifth point, Blackmon claims that allowing detention of juveniles without warrants violates the equal protection provisions of the United States Constitution. However, the Court of Criminal Appeals rejected this argument in *Vasquez*. *Vasquez*, 739 S.W.2d at 43. Blackmon cites to Judge Clinton's dissent from the Court's denial of the motion for rehearing in *Vasquez*, but does not provide any other authority to support his argument. *Vasquez*, 816 S.W.2d at 750 (Clinton, J., dissenting). Therefore, we overrule point five.

 Next, Blackmon complains that the police were allowed to take him back to the police building for interrogation. He argues that the police should not have been allowed to interrogate him after the police had "relinquish[ed] ultimate control over the investigative function of the case." *Comer v. State*, 776 S.W.2d 191, 196 (Tex.Crim.App.1989). However, section 52.04(b) provides that "[t]he office or official designated by the juvenile court may refer the case to a law-enforcement agency for the purpose of conducting an investigation to obtain necessary information." TEX.FAM.CODE ANN. § 52.04(b). The statute does not require any special ceremony for the referral. *Beaver v. State*, 824 S.W.2d 701, 703 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). Here, a juvenile probation officer testified at the hearing on the motion to suppress that she called the Waco police department and told them Blackmon wanted to give a statement regarding the murder of Christopher Schumacher. The detective who took the statement confirmed that he had was responding to the probation officer's request. As in *Beaver*, the procedure mandated by *Comer* and the statute were properly followed, and the court did not err in rejecting Blackmon's request that his statement be suppressed on this ground. We overrule point six.[1]

---

1. In point six, Blackmon claims that the court erred in rejecting his motion to suppress when the evidence showed that the "statement had been taken after interrogation by police detectives after the detectives had referred appellant to juvenile authorities and had relinquished ultimate control over the investigative function of the case." In the argument in his brief, he claims that "it was improper for the detectives to again take control of Appellant on February 24 and to physically remove him from the juvenile detention facility and transport him to Waco Police Headquarters for interrogation." However, in the trial court he argued that "Nothing in [section 52.025 of the Family Code] suggests that the police can—that a room at the police department can be designated as an interrogation center for juveniles." TEX.FAM.CODE ANN. § 52.025 (Vernon 1996). We do not believe that he is relying on the same argument in this court as he presented to the trial court. Generally, to preserve an argument for our consideration, the theory must first be presented to the trial court. TEX.R.APP.P. 52(a); *Marin v. State*, 851 S.W.2d

### SELF-DEFENSE INSTRUCTION

██ In its rebuttal evidence, the State presented testimony from a teacher at University High School who testified that Blackmon called him in early June 1994 on the telephone. During the conversation Blackmon "said this guy was trying to shoot him, so that's why he did what he did.... He said that's why he shot him, because this guy was trying to shoot him." By point seven, Blackmon claims that this evidence was sufficient to raise self-defense, and the court erred when it refused to instruct the jury on the issue. However, "a robber has no right of self-defense against his victim." *Westley v. State*, 754 S.W.2d 224, 230 (Tex.Crim.App. 1988), *cert. denied*, 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989); *Davis v. State*, 597 S.W.2d 358, (Tex.Crim.App.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed.2d 238 (1980); *see also* TEX.PENAL CODE ANN. § 9.31(b)(4) (Vernon Supp.1996). Therefore, the court properly refused to instruct the jury on self-defense. We overrule point seven.

### PUNISHMENT

██ We allowed Blackmon to file a supplemental brief containing one point of error. 10TH TEX.APP. (WACO) LOC.R. 7(f). In this point of error, he argues that the legislature has failed to prescribe a capital-murder penalty for a defendant younger than seventeen years of age. He first notes that the Penal Code provides two punishments for capital murder in cases where the State "seeks" the death penalty—death or life imprisonment. TEX.PENAL CODE ANN. § 12.31(a). Where the State "does not seek the death penalty", only one punishment is available—life imprisonment. *Id.* § 12.31(b); TEX.CODE CRIM.PROC. ANN. art. 37.071, § 1 (Vernon Supp.1996). However, because "[n]o person may, in any case, be punished by death for an offense committed while he was younger than 17 years", Blackmon reasons that the State can neither "seek" nor "not seek" the death pen-

alty in instances where the defendant is less than seventeen years old at the time of the offense and no punishment is prescribed by section 12.31. TEX.PENAL CODE ANN. §§ 8.07(d), 12.31.

██ Key to Blackmon's argument is the assumption that "seek" requires a voluntary choice on the part of the State. We reject that interpretation and instead conclude that where the State "does not seek" the death penalty at trial, for whatever reason, the automatic life imprisonment provisions of sections 12.31 and 37.071 apply. *Id.* § 12.31(b); TEX.CODE CRIM.PROC.ANN. art. 37.071, § 1. Blackmon's supplemental point is overruled.

Having overruled all of Blackmon's points of error, we affirm the judgment.

---

275 (Tex.Crim.App.1993). Unless the grounds are clear from the context, a party is required to specifically raise its claim in the trial court. TEX. R.APP.P. 52(a); *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex.Crim.App.1992). An objection or motion based on one ground cannot be used

to support a different legal theory on appeal. *Cook v. State*, 858 S.W.2d 467, 474 (Tex.Crim. App.1993). Thus, as an alternative holding, we conclude that his complaint in point six is not preserved and the point is waived.