Affirmed and Memorandum Opinion filed February 28, 2008








Affirmed
and Memorandum Opinion filed February 28, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00738-CR

____________

 

JUAN CARLOS MARINES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause No. 1040507

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Juan Carlos Marines, was indicted on the offense
of murder.  The jury returned a guilty verdict, and the trial court sentenced
appellant to forty-five years= confinement in the Texas Department of
Criminal Justice, Institutional Division, and a $10,000 fine.  Appellant then
filed a motion for a new trial based on Anewly-discovered
evidence,@ which the trial court denied.  In three issues,
appellant appeals his conviction and the denial of his motion for a new trial,
claiming (1) the evidence is legally insufficient to support his conviction;
(2) the evidence is factually insufficient to support his conviction; and (3)
the trial court erred in denying his motion for a new trial, as the evidence
discovered and presented in his motion was not known at the time of trial. 
Finding no error in the trial court=s judgment, we
affirm.

Factual
and Procedural Background

On April 30, 2005, shortly after 2:00 a.m., a fight broke
out in the parking lot of Slick Willie=s, a pool hall
located just south of downtown Houston.  Involved in this fight were numerous
individuals, including, among others, appellant and Alejandro German, the
complainant.  Sometime during the fight, at least two individuals in a
dark-colored Ford F-150 truck drove across the parking lot of the pool hall, and
multiple shots were fired from its passenger-side window.  The complainant was
struck three times, and died at the scene.

Officer J.C. Bonaby, an investigator with the Houston
Police Department homicide division, was assigned to investigate the incident. 
Witnesses at the scene made conflicting statements to Bonaby and other
investigating officers:  several reported that the shooter was a Hispanic male
with dark hair, while another indicated that there were two shooters.  Still
another reported that, while he was unsure, there may have been four
individuals in the F-150.  At least three witnesses told Bonaby that they had
seen the shooters, but none could provide a complete physical description of
the suspects or the license plate number of the F-150.








During his investigation, Bonaby received several anonymous
tips, and one from a law enforcement officer.  The tips informed Bonaby of the
general location of the shooter=s residence, as well as his name, address,
and that he drove a black Ford pickup truck.  Using this information, Bonaby
discovered that appellant and his father were the registered owners of a black
Ford F-150 truck.  Bonaby then created a photo array using appellant=s Texas driver=s license
photograph, and showed the array to two individuals who witnessed the
shooting:  Raphael Reyes, a brother of the complainant who was also involved in
the fight, and Crystal Rocha, the girlfriend of another of Reyes= brothers. 
According to Bonaby, Reyes identified appellant in the photo array without
hesitation in less than two minutes= time.  Rocha
selected another photo from the array as that of the shooter.  Bonaby then
obtained an arrest warrant, and arrested appellant.  The weapon used to shoot
the complainant was never recovered.

Appellant was charged by indictment with the offense of
murder.  On August 10, 2006, the jury found him guilty as charged.  The jury
assessed punishment at forty-five years= confinement in
the Texas Department of Criminal Justice, Institutional Division, and a $10,000
fine.  The trial court sentenced appellant and entered judgment in accordance
with the jury=s verdict, and appellant timely filed his notice of
appeal.  Appellant later filed a motion for a new trial based upon Anewly-discovered
evidence.@  The trial court denied the motion.  This appeal
followed.

Analysis
of Appellant=s Issues

I.        The
Evidence is Legally Sufficient to Support Appellant=s Conviction.








In his first issue, appellant contends that the evidence is
legally insufficient to support his conviction.  According to him, the evidence
indicates that he was not the driver of the F-150 the night of the shooting,
and that he was not the shooter.  He argues that Anewly-discovered@ evidence
presented in his motion for a new trial[1]
demonstrates that Danny Rosales, the passenger in the light blue Dodge truck
driven by appellant the night of the shooting, was the shooter, and therefore
appellant can only be found guilty under the law of parties,[2]
which was neither alleged in the indictment, nor contained in the charge. 
Appellant argues that no rational jury could have possibly convicted him of
being the shooter, and thus the evidence is legally insufficient to sustain his
conviction.

A.      Standard
of Review and Applicable Law.

In evaluating the legal sufficiency of the evidence, we
must view the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Vasquez v. State, 67 S.W.3d 229, 236 (Tex.
Crim. App. 2002).  We consider all the evidence that sustains conviction,
whether properly or improperly admitted or whether introduced by the
prosecution or the defense. Simpson v. State, 227 S.W.3d 855, 860 (Tex.
App.CHouston [14th
Dist.] 2007, no pet.) (citing Conner v. State, 67 S.W.3d 192, 197 (Tex.
Crim. App. 2001)).  The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given to testimony, and it is also the
exclusive reconciler of conflicts in the evidence. Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000).  When the record supports conflicting
inferences, we presume the trier of fact resolved conflicts in favor of the
prosecution, and we must defer to that resolution. Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).  If any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt, we
must affirm. Simpson, 227 S.W.3d at 860B61 (citing McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997)).

B.      Application
of Law to the Facts.








To obtain a conviction for murder in this case, the State
was required to prove beyond a reasonable doubt that appellant (1)
intentionally or knowingly caused the death of the complainant; or (2) intended
to cause serious bodily injury and committed an act clearly dangerous to human
life that caused the death of the complainant. See Tex. Pen. Code _ 19.02(b)(1),
(2).  Appellant contends that the evidence failed to demonstrate that he was
the driver of the F-150 in the Slick Willie=s parking lot the
night of the shooting, and that he was the shooter.  Instead, appellant argues
that the evidence shows that the passenger of the light blue Dodge truck driven
that night by appellant was the shooter, and therefore appellant cannot be held
liable as the principal to the offense.

However, Officer Bonaby testified that witnesses at the
scene described the shooter as a Hispanic male with dark hair, driving in a
black Ford truck.  Bonaby further testified that the multiple tips he received
all led him to appellant, and that appellant was the registered owner of a
black Ford truck matching the vehicle description from the scene.  Moreover,
two eyewitnesses, Reyes and Carmello Salinas, Reyes= half-brother,
identified appellant as the individual shooting from the passenger side of the
black Ford truck in the parking lot of Slick Willie=s.  Although
appellant presented evidence that his father sold the black Ford F-150 truck
approximately one month before the date of the shooting, that he had borrowed
his brother=s light blue Dodge truck that night, and that he was
running to that truck when the shooting began, other evidence indicated that
the F-150 was still registered in appellant=s and his father=s name at the time
of trial, and two eyewitnesses identified appellant as the shooter.  It was the
jury=s duty to
reconcile conflicts in the evidence, and here the jury apparently did so in
favor of the prosecution. See Wesbrook, 29 S.W.3d at 111; Clayton,
235 S.W.3d at 778.

Therefore, in reviewing the evidence in the light most
favorable to the prosecution, we cannot say the jury was irrational in finding
appellant guilty of murder as charged.  We therefore overrule appellant=s first issue.

II.       The
Evidence is Factually Sufficient to Support Appellant=s Conviction.








In his second issue, appellant contends that the evidence
is factually insufficient to support his conviction.  He argues that the great
weight and preponderance of the evidence contradicts a finding of guilt in this
case.  Appellant further urges this Court to find that the factual
insufficiency Arises to such a degree of fundamental unfairness that
to refuse to consider the error denies him constitutional due process.@

A.      Standard
of Review and Applicable Law.

When conducting a factual‑sufficiency review, we view
all of the evidence in a neutral light. Garza v. State, 213 S.W.3d 338,
344 (Tex. Crim. App. 2007).  We may set the verdict aside if (1) the evidence
is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the
verdict is against the great weight and preponderance of the evidence.  Watson
v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)).  However, while we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d
at 414 (stating that a court should not reverse a verdict it disagrees with
unless it represents a manifest injustice even though supported by legally
sufficient evidence).  Finally, we must discuss the evidence that, according to
appellant, most undermines the jury=s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.      Application
of Law to the Facts.

In his brief, appellant points out various pieces of
evidence that allegedly undermine the verdict, and we address each accordingly.








First, appellant asserts that all of the State=s witnesses were
too drunk to interview at the scene.  He claims that Reyes was too intoxicated
the night of the shooting to make a positive identification of appellant at a
later date, and the only sober witness of the night positively identified
another photograph from the photo array as that of the shooter.  Appellant also
contends that, because Reyes and appellant were both involved in the fight,
Reyes may have had a motive to lie about his identification of appellant. 
While Officer Bonaby  testified on cross-examination that he did not interview
Reyes at the scene because Reyes appeared to be intoxicated, and thus could
probably not furnish him with accurate information at that time, on redirect
examination Bonaby clarified that Reyes also was Aemotional,@ crying, and Abasically
hysterical@ at the scene because his brother had been killed.  From
his experience, that was not a good time to conduct an on-scene investigation. 
Furthermore, Reyes testified on direct examination that he only Ahad a couple of
beers@ that night, that
he was not getting drunk because he was driving, that he got a good Aat least a minute
look@ at the shooter,
and that it was appellant shooting the gun from the passenger window of the
black truck.  Reyes continued, AI could never forget that day, ma=am.  Every day I
see [the scene] as I go to sleep.  I see [appellant=s] face.  I can=t forget it.@  Moreover, while
Rocha did identify a different photograph in the photo array as that of the
shooter, on direct examination Salinas, another eyewitness to the shooting,
identified appellant as the shooter.  Salinas testified that he had Aclear vision@ of the shooter
during the incident, and when asked, Ado you see the
person who was hanging out of that truck shooting?@, Salinas
indicated it was appellant.








Next, appellant points to testimony that the parking lot
was Avery dim,@ no witnesses ever
saw the license plate on the truck, and there was no physical description of
the shooter given to police that night.  Appellant further directs our
attention to the fact that A[n]o weapons, truck keys, the truck,
fingerprints, or any other evidence@ implicating
appellant as the shooter was ever located, and that appellant=s black truck was
sold before the shooting.  While Robert Gutierrez, the crime scene
investigator, testified on direct examination that the parking lot was Avery dim,@ on
cross-examination he explained, Athe lighting was
dim, but you could still see,@ and on redirect examination he clarified,
Adim lighting to me
means that there=s enough light to see by but, you know,
maybe not enough light to properly read a book because it would hurt your eyes,
not that you couldn=t read it but it=s not the proper
lighting conditions or optimal lighting,@ and that A[e]ven a very
well-lit parking lot would have to have lots of lights for me to consider it
not dim.@  Furthermore,
Reyes testified that the lights in the parking lot Abrighten up pretty
bright out there,@ and that it was light enough to see,
while Salinas testified that the light poles outside Slick Willie=s Aactually brighten
up the parking lot,@ Ait=s real easy to see
everything,@ A[t]here=s a lot of light
in front,@ and that there was Aplenty of light.@

Moreover, although appellant claims that the investigators= failure at the
scene to get a license plate number and physical description of the shooter
undermines the verdict, Bonaby testified that by A[t]alking to
several different people we were able to piece together a description of the
vehicle [and] a description of the possible suspect.@  Bonaby conceded
that the physical description of the shooter he got at the scene was AHispanic male,
dark hair,@ but also stated that every bit of evidence does not
come at the crime scene, and that a suspect is generally developed using
evidence that comes in piecemeal.  Bonaby also testified that he was not
surprised he did not find the gun used in the shooting, A[b]ecause my
experience tells me I would not find a weapon that was used in a violent crime
at the location if the defendant had any smarts.@

Finally, appellant points out alleged inconsistencies
between the statements of Officer Brian Bueno, an off-duty Houston police
officer working security at Slick Willie=s the night of the
shooting, who testified that he saw the truck Aburn out@ after the
shooting stopped, and Reyes, who testified the truck was driven slowly, and
even stopped, as the shooting occurred.  These statements are not necessarily
inconsistent, and even if they were, this is a question of credibility, and the
jury has already passed on the evidence. See Johnson, 23 S.W.3d at 7B9; Fuentes v.
State, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) (A[T]o avoid
intruding on the jury=s role as arbiter of the weight and
credibility of the evidence, a factual sufficiency review remains deferential
to the jury=s verdict.@).








In reviewing the entire record in a neutral light, we
cannot objectively conclude that the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or that the verdict is against the great
weight and preponderance of the evidence.  The physical description of the
shooter given to officers at the scene is consistent with that of appellant. 
Witnesses reported that the shooter fired from the passenger window of a black
Ford truck; appellant is the registered owner of a black Ford F-150 truck.  Two
eyewitnesses positively identified appellant as the shooter in the black Ford
truck, and the multiple tips received by Officer Bonaby all pointed to
appellant as being the shooter.  The failure of another eyewitness to identify
the photograph of appellant in the photo array as that of the shooter is
controverting, but this evidence is not so strong as to render the verdict
clearly wrong and manifestly unjust, or against the great weight and
preponderance of the evidence.  Similarly, the evidence presented by appellant
regarding the quality of lighting at the scene, the inability of witnesses to
provide a full physical description of the shooter or the license plate number
of the truck, the failure of investigators to recover the gun used in the
shooting, and the allegedly inconsistent statements made by Officer Bueno and
Reyes, does not render the verdict clearly wrong and manifestly unjust, or
against the great weight and preponderance of the evidence.  We therefore
overrule appellant=s second issue.

III.      The
Trial Court Did Not Err in Denying Appellant=s Motion for a New
Trial.








In his final issue, appellant contends that the trial court
erred in denying his motion for a new trial based on Anewly-discovered
evidence.@[3]  Appellant
asserts that no witness, himself included, nor his attorney knew that Rosales,
whom he alleges was the passenger in the light blue Dodge truck driven by
appellant the night of the shooting, was the shooter of a .40 caliber Glock,
the type of weapon used to shoot the complainant.[4] 
Appellant argues that this evidence only became known and available after his
conviction, when Rosales confessed to several individuals that he was the
shooter.  Appellant concedes that he knew Rosales fired Asome unknown@ gun out of the
passenger-side window of the truck, but that he did not know that this weapon
was a .40 caliber Glock, which he alleges was the murder weapon.  Appellant
attempts to draw this distinction, and urges this Court to therefore find that
the trial court abused its discretion in denying his motion for a new trial
based on this Anewly-discovered@ evidence.

A.      Standard
of Review and Applicable Law.








We review a trial court=s ruling on a
motion for a new trial for an abuse of discretion. Keeter v. State, 74
S.W.3d 31, 37 (Tex. Crim. App. 2002). The trial court abuses its discretion in
denying a motion for a new trial based upon newly-discovered evidence when the
record shows (1) the newly-discovered evidence was unknown or unavailable to
the movant at the time of his trial; (2) the movant=s failure to
discover or obtain the evidence was not due to a lack of diligence; (3) the new
evidence is admissible and is not merely cumulative, corroborative, collateral,
or impeaching; and (4) the new evidence is probably true and will probably
bring about a different result on another trial. Id. at 36B37; Boyett v.
State, 692 S.W.2d 512, 516 (Tex. Crim. App. 1985).  Motions for new trial
on grounds of newly-discovered evidence are disfavored by courts and viewed
with great caution. Margraves v. State, 56 S.W.3d 673, 685 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  A new trial is never allowed for the purpose of
obtaining evidence that was known and accessible to the defendant at the time
the cause was tried, even if the defendant had knowledge of the evidence but
failed to communicate it to his attorney. Drew v. State, 743 S.W.2d 207,
227 n.14 (Tex. Crim. App. 1987).

B.      Application
of Law to the Facts.

At the hearing on his motion for a new trial, appellant
produced several pieces of what he calls Anewly-discovered@ evidence[5]
in an attempt to prove that he was merely the driver of the light blue Dodge
truck the night of the shooting, and that Rosales was the actual shooter.  The
trial court reviewed the record, the affidavits, and the audiotape, concluded
that the evidence presented by appellant was not newly-discovered, and denied
appellant=s motion for a new trial.  In reviewing this evidence,
particularly the affidavits submitted by appellant, we conclude that the trial
court did not abuse its discretion in denying appellant=s motion for a new
trial.  At a minimum, appellant failed to meet the first two prongs of the
test. See Ho v. State, 171 S.W.3d 295, 307 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (holding the trial court did not abuse
its discretion in denying the appellant=s motion for a new
trial when he failed to demonstrate that (1) the newly-discovered evidence was
unknown or unavailable to him at the time of trial; and (2) his failure to
obtain this evidence was not due to a lack of diligence).








From the affidavits, it appears that, at the time of trial,
appellant knew that Rosales fired a gun from the passenger window of the truck
he was driving the night of the shooting.  In his affidavit, Roger avers, AMonica was saying,
[Rosales] told [appellant], if things got to [sic] far, [Rosales] would turn
himself in.@  This statement is corroborated by another in Monica=s affidavit,
wherein she states that, sometime following appellant=s trial, she asked
Rosales Aare you going to
turn yourself in like you said?@  In her affidavit, Kayleigh, appellant=s wife, avers
that, on the night of the shooting, she witnessed appellant and Rosales get
into the truck, circle the parking lot, and stop Anext to this group
of guys [with] the passenger window rolled down and Danny stuck his head and
arm out and shot about 9 or 10 times,@ and that she did
not testify to this at trial because appellant Atold me he didn=t want me
testifying because I had just had my baby and he didn=t want anything to
happen to us (me and my baby).@  Finally, in his own affidavit appellant
states, AI did not know
that Danny Rosales was going to shoot at anyone when we were leaving Slick
Willie=s.@  Thus,  from
these affidavits, it appears that, at the time of trial, appellant knew that
Rosales had fired a gun from the passenger window of the truck he was driving
the night of the shooting. 

Moreover, appellant concedes in his brief that he knew
Rosales fired Asome unknown@ gun out of the
passenger-side window of the truck, but that he did not know that this weapon
was a .40 caliber Glock.  Appellant alleges that a .40 caliber Glock was the
murder weapon, and argues that there is a distinction between knowing Rosales
fired an unknown gun versus firing a .40 caliber gun.  We disagree.  Appellant
admits he knew Rosales fired a gun from the passenger side of the truck the
night of the shooting.  It is of no consequence that appellant did not know the
particular caliber of the gun allegedly fired by Rosales.  Here, the Anewly-discovered@ evidence offered
by appellant does not address relevant facts to which he was not privy at the
time of trial. See Drew, 743 S.W.2d at 227.  Assuming the truth of the
statements in the affidavits and in his appellate brief, appellant was
certainly aware that Rosales discharged a deadly weapon from the
passenger window of the truck the night of the shooting.   Thus, this evidence
is not newly-discovered for the purposes of a motion for a new trial.








Furthermore, appellant=s
failure to obtain this evidence was due to a lack of diligence.  At trial,
appellant admittedly knew Rosales fired a gun from the passenger window of the
truck the night of the shooting, yet failed to inform either the police or his
attorney of this fact, much less call Rosales to testify at trial.  Thus,
we find that appellant=s failure to obtain
this evidence was due to lack of diligence. See Ho, 171
S.W.3d at 307 (finding that the appellant was on notice of the State=s
intention to introduce evidence of a murder, and that the appellant did not
exercise diligence in procuring the testimony of an alibi witness); Zamora
v. State, 647 S.W.2d 90, 95 (Tex. App.CSan
Antonio 1983, no pet.) (finding lack of diligence when appellant knew about
witness but chose not to inform attorney); see also Langley v. State,
No. 14-01-00484-CR, 2002 WL 1041035, at *2 (Tex. App.CHouston
[14th Dist.] May 23, 2002, pet. ref=d) (not designated for
publication) (finding lack of diligence where appellant took no action in
discovering before trial what sort of testimony witness could offer despite
knowing witness's identity before trial).

For the foregoing reasons, we
conclude that the trial judge did not abuse his discretion in denying appellant=s
motion for a new trial.  At a minimum, appellant has failed to show that  this Anewly-discovered@
evidence was either unknown or unavailable to him at the time of trial, and
that the failure to obtain this evidence was not due to a lack of diligence. See
Ho, 171 S.W.3d at 307; Zamora, 647 S.W.2d at 95.  We therefore
overrule appellant=s final issue.

Conclusion

Finding
no error in the trial court=s
judgment, we affirm.

 

 

 

 

 

 

/s/      Wanda
McKee Fowler

Justice

 

 

Judgment rendered and Memorandum Opinion filed February 28,
2008.

Panel consists of Justices Fowler, Frost, and Seymore.









[1]  In fact, appellant urges this
Court to consider the evidence presented in his motion for a new trial in our
determination of both legal and factual sufficiency.  He asserts that no Texas
case has yet directly confronted Athis
rare situationCi.e., whether the scope of factual sufficiency review
includes evidence presented in the motion of new trial record.@  We disagree.  Several Texas courts of appeal,
including this Court, have squarely addressed this issue, all uniformly holding
that an appellate court may not consider evidence presented after the verdict
in a factual sufficiency review. See, e.g., Tucker v. State, 15 S.W.3d
229, 235 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d); Blackmon v. State, 926 S.W.2d 399, 402
(Tex. App.CWaco 1996, pet. ref=d). 
Moreover, the Texas Court of Criminal Appeals has expressly stated that, in a
factual sufficiency review, the appellate court Areviews the evidence weighed by the jury . . . .@ Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000).  The scope of a legal sufficiency review is also limited to only
that evidence before the jury. See Moff v. State, 131 S.W.3d 485, 488
(Tex. Crim. App. 2004).  Thus, we will not consider the evidence presented with
appellant=s motion for a new trial in our determination of legal
and factual sufficiency.





[2]  See Tex. Penal Code ' 7.01(a) (AA person is criminally responsible as a party to an offense if the
offense is committed by his own conduct, by the conduct of another for which he
is criminally responsible, or by both.@).





[3]  In his brief, appellant also contends that the trial
court erred in denying his motion for a new trial because the evidence is
insufficient to sustain the verdict.  However, at trial, the sole basis of
appellant=s motion for a new trial was Anewly-discovered evidence.@  Because appellant failed to raise the issue of
sufficiency of evidence in either his motion for a new trial or during the
hearing on that motion, the argument is waived, and we need not address it
here. Tex. R. App. P. 33.1(a); see
Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (stating the
point of error on appeal must correspond to the objection made at trial); White
v. State, No. 01-03-00264-CR, 2004 WL 1351420, at *3 (Tex. App.CHouston [1st Dist.] June 17, 2004, no pet.) (mem. op.,
not designated for publication) (ABecause
his appellate argument does not comport with the ground raised in his motion
for new trial, appellant has waived his legal sufficiency challenge, and we
need not address it.@).





[4]  Officer Gutierrez, the crime scene investigator, testified on direct
examination that officers recovered eight .40 caliber cartridge casings from
the scene, as well as seven bullet fragments.  Gutierrez further testified that
he could not personally tell whether those bullet fragments were fired from a
.40 caliber gun, and that it was up to
the firearms lab to make such an identification.  There was no evidence
presented at either the guilt-innocence or the punishment phase of trial that the
murder weapon was a .40 caliber Glock; appellant merely alleges that this was
the murder weapon in his motion for a new trial and in his appellate brief.





[5]  This evidence included affidavits from Priscilla
Chavez, Lidya Sapien, Roger Guerra, Monica Marie Villagomez-Marines, Kayleigh
Ann Marines, defense attorney Brian Coyne, firearms expert John Greenfield, and
appellant.  In their affidavits, Priscilla, Monica, Kayleigh, and attorney
Coyne aver that Rosales confessed to being the shooter.  Greenfield=s affidavit was used solely to show that a Glock can
fire a .40 caliber bullet, matching the size of the casings found at the
scene.  Appellant also submitted an audiotape recording made by Kayleigh of a
conversation between herself and Rosales occurring approximately one week after
appellant=s conviction and sentencing.  This audiotape
purportedly contains an admission by Rosales that he Afired the Glock@ at
the complainant the night of the shooting.