CORTEZ v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-147-CR

RAUL CORTEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Raul Cortez appeals his conviction for possession of a controlled substance, namely methamphetamine, of four grams or more but less than 200 grams, with the intent to deliver.  After the jury convicted Appellant of the charged offense, the judge sentenced Appellant to 35 years’ confinement.  In nine points, Appellant complains that the trial court erred by admitting evidence obtained pursuant to a warrantless search, by finding that the consent to search was valid, by admitting expert testimony that had not been disclosed in response to a discovery request, by failing to grant a new trial, and by failing to give a jury charge on the Fourth and Fifth Amendments.  He also asserts that he was denied his right of confrontation and that the evidence was legally and factually insufficient to support his conviction.  We affirm.

FACTUAL BACKGROUND

On March 5, 2004, an inmate informed Detective Daniel Pearson of the Tarrant County Auto Theft Task Force that a possible stolen motorcycle was located at 6715 South Creek Drive in Fort Worth, Texas.  The informant told him the motorcycle was yellow and that the house was equipped with surveillance cameras.  Two uniformed officers of the Fort Worth Police Department and a sergeant of the Task Force accompanied Detective Pearson to the location.  The officers saw a motorcycle matching the description given to Detective Pearson.

Detective Pearson stated that as soon as he arrived at the house, he was met outside by a woman named Brandi Watson.  She indicated that someone was inside the house.  Two uniformed officers went to the front door, and through the open door, the officers saw an assault rifle leaning against the fireplace.  Thus, according to Officer Fineman, the officers performed a protective sweep for officer safety.  Watson stepped outside the house.  While conducting the protective sweep, the officers encountered Appellant and escorted him out of the house.  The officers told Watson and Appellant that they had information that the motorcycle was possibly stolen.  Appellant stated that the motorcycle belonged to him, and the officers ran a check of the motorcycle’s registration based on a search of the vehicle identification number that reflected that the motorcycle was registered in Appellant’s name.  The officers also ran a separate check of the engine number, and that check indicated that the engine number was from a motorcycle that was reported as stolen.

According to the officers, Watson and Appellant both signed a consent-to-search form.  Inside the garage, officers found the frame to the stolen motorcycle.  After the consent form was signed, the officers searched the house.  Inside the house, officers found contraband, including methamphetamine and a digital scale.

SUFFICIENCY OF THE EVIDENCE

In his sixth and seventh points, Appellant contends that the evidence is legally and factually insufficient to support his conviction.

1. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

2. Applicable Law

Appellant was charged by indictment for possession of a controlled substance, namely methamphetamine, of four grams or more but less than 200 grams, with the intent to deliver.  To convict a defendant of possession of a controlled substance, the State must prove that the defendant exercised care, custody, control, or management over the drugs and that he knew he possessed a controlled substance.  
Brown v. State
, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  Intent to deliver may be proven by circumstantial evidence, including evidence surrounding its possession
.  
Guy v. State
, 160 S.W.3d 606, 615 (Tex. App.—Fort Worth 2005, pet. ref’d).  Additionally, intent to deliver may be inferred from the quantity of drugs possessed and from the manner in which they are packaged.  
Id.

3. Sufficiency of the Evidence

Appellant essentially argues that the evidence is legally insufficient to support his conviction because of a lack of affirmative links to the contraband, as fingerprint testing was not performed on the items seized from his house.  The “affirmative links” rule is really a shorthand expression to identify what must be proven in a prosecution for the possession of illegal drugs.  
Brown
, 911 S.W.2d at 747.  The accused must have exercised actual care, control, or custody of the substance, as well as have been conscious of his connection with it and have known what it was.  
Id. 
 Evidence which affirmatively links him to the substance suffices for proof that he possessed it knowingly.  
Id.  
It does not really matter whether this evidence is direct or circumstantial.  
Id.

The factors to be considered in establishing affirmative links include the following: (1) the defendant’s presence when the search was executed, (2) whether the contraband was in plain view, (3) the defendant’s proximity to and the accessibility of the narcotic, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband when arrested, (6) whether the defendant made incriminating statements when arrested, (7) the presence of odor of the contraband, (8) the presence of other contraband or drug paraphernalia, (9) the defendant’s ownership or right to possession of the place where the controlled substance was found, and (12) whether the place the drugs were found was enclosed. 
Harris v. State
, 173 S.W.3d 575, 579 (Tex. App.—Fort Worth 2005, no pet.); 
Hyett v. State
, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d); 
Jones v. State
, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref’d); 
Chavez v. State
, 769 S.W.2d 284, 288-89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d).  Another factor to consider is whether the contraband is found in an area that contains men’s clothing if the defendant is a male.  
Robles v. State
, 104 S.W.3d 649, 651 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  It is not the number of affirmative links present that is important, but rather the “logical force” that they create to prove that the defendant committed the crime.  
Nhem v. State
, 129 S.W.3d 696, 699-700 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  The link, however, need not be so strong that it excludes every other reasonable hypothesis except the defendant’s guilt.  
Brown
, 911 S.W.2d at 748.

Appellant contends that the fact that Sandra Reyna testified that he spent the night away from the house the evening prior to the search is “compelling.” We disagree.  Reyna testified that Appellant lived at the address on South Creek in Fort Worth.  The officers found a utility bill and a bill from the City of Fort Worth addressed to Appellant at 6715 South Creek, where the search occurred.  Officers saw surveillance cameras outside the house that were connected to video monitors inside the house.  Appellant was inside the house when the officers went to that location and was present when officers conducted a search of the residence.  Next to a safe containing plastic baggies, officers found men’s clothing and an envelope addressed to Appellant at the South Creek address. 

Officers found medium-sized and smaller-sized baggies in the house.  The officers saw a digital scale in plain view.  Officer Thomas McNutt testified that a digital scale, when found in connection with narcotics and plastic baggies, is used for the weighing, trafficking and delivery of narcotics.  Additionally, officers found a large amount of methamphetamine—106.23 grams—in the house.  Officer McNutt testified that the amount of methamphetamine that was confiscated was more than the typical street user would purchase.

Though the officers did not request that the items confiscated in the house be tested for fingerprints, sufficient evidence affirmatively links Appellant to the methamphetamine.  Accordingly, we conclude that the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that Appellant was in possession of the methamphetamine and that he had an intent to deliver it.  Additionally, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt.  Accordingly, we overrule Appellant’s sixth and seventh points. 

SUPPRESSION OF EVIDENCE

In his first and second points, Appellant contends that the trial court erred in denying his motion to suppress because the evidence was seized in violation of the Fourth Amendment to the United States Constitution and the consent to search was not validly and voluntarily given.  Appellant argues that Watson did not have the authority to consent to the search of the residence, that the signature purported to be his on the consent form is not his signature, and that he did not consent to the search orally or in writing. 

1. Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Endariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  
Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  
Id
.  Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  
Id
.

Whether a search is reasonable is a question of law that we review de novo.  
Kothe v. State
, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).  Reasonableness is measured by examining the totality of the circumstances.  
Id
. at 63.  It requires a balancing of the public interest and the individual’s right to be free from arbitrary detentions and intrusions.  
Id
.  A search conducted without a warrant is per se unreasonable unless it falls within one of the “specifically defined and well-established” exceptions to the warrant requirement.  
McGee v. State
, 105 S.W.3d 609, 615 (Tex. Crim. App.), 
cert. denied
, 540 U.S. 1004 (2003); 
see
 
Best
, 118 S.W.3d at 862. 

2.  The Trial Court’s Ruling

At the conclusion of the suppression hearing, the trial court noted that the testimony of the searching officers conflicted with Appellant’s testimony.  After reviewing the evidence, the court determined that Appellant consented to the search both orally and in writing.  The court also found that the consent was free and voluntary and that it was not revoked.  Therefore, the trial court overruled Appellant’s motion to suppress.

3. Consent

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause, as long as the consent is voluntary.  
Schneckloth v. Bustamonte
, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973); 
State v. Ibarra
, 953 S.W.2d 242, 243 (Tex. Crim. App.1997) The federal constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence; the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given.  
Carmouche
, 10 S.W.3d at 331.  Voluntariness is to be determined from all the circumstances surrounding the consent. 
 Schneckloth
, 412 U.S. at 248-49, 93 S. Ct. at 2059.  Testimony by law enforcement officers that no coercion was involved in obtaining the consent is evidence of the consent’s voluntary nature. 
Martinez v. State
, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); 
Hunter v. State
, 102 S.W.3d 306, 311 (Tex. App.—Fort Worth 2003, no pet.). 

At the suppression hearing, Officer McNutt testified that he went to 6715 South Creek in Fort Worth, Texas to assist Detective Pearson with an investigation at that residence.  When he arrived, he met Appellant, Watson, Detective Pearson, other Task Force officers, and two uniformed Fort Worth police officers.  Officer McNutt testified that he spoke with Appellant and Watson and asked them for consent to search.  Officer McNutt testified that Watson and Appellant both informed him that they lived at the house. According to Officer McNutt, they voluntarily signed the consent to search form.

The consent to search form reads as follows:

I, 
Watson, Brandi
,
(footnote: 2) have been informed by the Texas Peace Officer who has served me with this document, that I have the right to refuse the officer, or any other officer, permission to conduct a search of the premises mentioned in this document, which are under my control.  I understand that should I refuse to consent, I have the right to be free from a search of these premises by a Texas Peace Officer, in the absence of a search warrant.  I understand that these rights are afforded to me under both the Constitution of the State of Texas and by the United States Constitution.  Nonetheless, I HEREBY VOLUNTARILY WAIVE AND SURRENDER THESE RIGHTS, AND GIVE MY PERMISSION TO THE FOLLOWING OFFICER, 
TW McNutt #2857
, ALONG WITH ANY ASSISTING OFFICERS TO CONDUCT A COMPLETE SEARCH OF: THE PREMISES, BUILDINGS, AND CURTILAGE, LOCATED AT 
6715 South Creek
.  

Officer McNutt testified that he filled in the blanks for his name and the address of the premises.  He testified that Watson filled her name in the top blank of the form.  Watson signed the consent-to-search form in two places.  Appellant’s purported signature appears underneath her signature in one place on the form and next to her signature in another location on the form.  Officer McNutt noted that Appellant had an unusual signature, but he testified that when he asked Appellant about his signature, Appellant informed him that was how he signed things.

At the suppression hearing, Appellant denied signing the document.  He denied that his initials were present on the consent to search form, and he testified that his signature would be his full name.  He further denied giving the officers either oral or written consent to search.  Appellant argues that, because the consent form begins with a declarative statement, “I Watson, Brandi,“ that does not contain his name, the statement is not his; thus, his signature therein would have no legal effect.  Officer McNutt testified that Appellant and Watson both gave oral consent to search the premises and that he saw them both sign the document.  Detective Pearson reviewed his report and stated that Appellant and Watson both signed the consent-to-search form and gave the officers permission to search the residence.

Officer McNutt testified that he did not make any promises or threats to either Watson or Appellant in order to induce them into signing the consent form.  Detective Pearson testified that he did not threaten anyone or make any promises to induce Watson or Appellant to sign the consent form, nor did he hear Officer McNutt make any promises for their signatures.

The issue of whether Appellant freely and voluntarily gave consent to search the house depends on the credibility and demeanor of the witnesses.  It is clear from the trial court’s findings of fact that the trial court chose to believe the testimony of Officer McNutt and Detective Pearson over Appellant’s testimony.  Giving almost total deference to the trial court’s determination of historical facts and 
application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, we determine that Appellant freely and voluntarily gave consent to search the house, in both written and oral form.
(footnote: 3)  
See Johnson
, 68 S.W.3d at 652-53.
  Accordingly, we overrule Appellant’s first and second points.  

EXPERT TESTIMONY

In his third point, Appellant asserts that the trial court erred in permitting expert testimony concerning drug trafficking when it was not disclosed in response to a discovery request.  Appellant complains that the trial court allowed Officer McNutt to testify as to the significance of the video surveillance cameras, the significance of a digital scale, the street price of narcotics, and the packaging of narcotics.  The State responds that the complained-of testimony did not involve expert opinions.  

1.  Standard of Review

The admissibility of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion.  
Osbourn v. State
, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).  If there is evidence supporting the trial court’s decision to admit evidence, there is no abuse, and the appellate court must defer to that decision.  
Id.
 at 538.

2. Preservation of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  

An objection must be made as soon as the basis for the objection becomes apparent.  
Tex. R. Evid.
 103(a)(1);
 Lagrone v. State
, 942 S.W.2d 602, 618 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997); 
Polk v. State
, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987).    If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived.  
Lagrone
, 942 S.W.2d  at 618. 

Regarding the street price of narcotics, the State elicited the following testimony: 

Q.  Are you acquainted with the price of – the going price of narcotics on the street?

A.  Yes. 

Q.  Assuming somebody wanted to sell a hundred grams of methamphetamine, what is the approximate value of that today? 

A.  Basically it’s approximately a hundred dollars a gram.   

Q.  So ten thousand dollars?

A.  Yes. 

[DEFENSE COUNSEL]: Your Honor, we’re gonna object to this testimony as calling for an expert opinion on the part of the witness in violation of the Court’s rulings concerning expert testimony and expert opinions and therefore we would object to the introduction of that evidence. 

[THE COURT]:  I am going to overrule that objection. 

Here, Appellant failed to make the objection as soon as the basis for objecting had become clear.  
See id.
  Appellant did not object until after the question had been asked and answered; thus, the objection was untimely and Appellant failed to preserve error on these grounds.  
See id.
 

Appellant also asserts that the following testimony regarding the packaging of narcotics involves expert testimony:

Q.  Now, when we talk about packaging, what sort of packaging – as far as a retail level where a user’s buying from a dealer, what sort of packaging does that methamphetamine usually come in?

A.  You’re gonna get the half-inch by half-inch, one by ones, two by twos, the little small packaging Ziplock little baggies–

Q.  And is that –

A.  With different colors. 

Q.  Okay. And the Ziplock baggies that you recovered at the scene, are those consistent with baggies that are used in the methamphetamine trade? 

A.  It is consistent for what I’ve seen from my experience and dealing. 

Appellant never lodged an objection to Officer McNutt’s testimony about the packaging of narcotics.  Therefore, Appellant has failed to preserve error on these grounds.  
See
 
Tex. R. App. P.
 33.1(a)(1).

3.  Discussion

Appellant acknowledged that the State permitted him to review the State’s file through an “open file” policy.  Appellant filed a motion for discovery before trial, and a hearing on the discovery motion was held.  The State represented that the only expert it anticipated calling was the lab chemist. 

In pertinent part, code of criminal procedure article 39.14 provides: 

On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence.

Tex. Code Crim. Proc. Ann.
 art. 39.14(b) (Vernon Supp. 2005).  Both lay and expert witnesses can offer opinion testimony.   Rule of evidence 701 covers the more traditional witness, one who “witnessed” or participated in the events about which he or she is testifying, while Rule 702 allows for a witness who was brought in as an expert to testify.  
See
 
Tex. R. Evid.
 701, 702.  When conducting an evaluation under rule of evidence 701, the trial court must decide (1) whether the opinion is rationally based on perceptions of the witness, and (2) whether it is helpful to a clear understanding of the witness’s testimony or to determine of a fact in issue.
  Fairow v. State
, 943 S.W.2d 895, 897 n.4 (Tex. Crim. App. 1997); see 
Tex. R. Evid.
  701. 

As a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met.  
Osbourn
, 92 S.W.3d at 537.  Perceptions refer to a witness’s interpretation of information acquired through his or her own senses or experiences at the time of the event; for example, things the witness saw, heard, smelled, touched, felt, or tasted.  
Id.
   Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert.  
Id.
  Since Rule 701 requires the testimony to be based on the witness’s perception, it is necessary that the witness personally observed or experienced the events about which he or she is testifying.  
Id.
  Thus, the witness’s testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations.  
Id.

Appellant complains about the trial court’s admission of testimony regarding the significance of the video surveillance cameras and the digital scale that officers found at his residence.  After Officer McNutt identified two photographs depicting the video surveillance cameras, the following discussion occurred:

Q.  Now, in your experience involving narcotics investigations, what’s the significance of surveillance cameras on the outside of a residence?

[DEFENSE COUNSEL]: Your Honor, I’m going to object to the extent that counsel is seeking to elicit expert opinions from this witness concerning these matters for the reason that prior notice of such intent has not been given. 

THE COURT: All right.  Well, I’ll permit him to state a lay opinion at this time. 

[DEFENSE COUNSEL]: Would my objection be overruled then, Your Honor?

THE COURT: Well, to the extent that your objection to his testimony as an expert, I’ll sustain that, but he may testify as to his lay opinion.  So, I’ll permit that testimony.  

After allowing Appellant to clarify his objection and hearing the State’s response, the trial court permitted the following:

Q.  How many–in your eight years, how many times would you say that you’ve found narcotics at a home and there have been surveillance cameras at the house?

A.  I can’t give you a number, but many.

Later, after Officer McNutt identified the State’s exhibit depicting the digital scale that officers found at Appellant’s house, the trial court permitted the following testimony over Appellant’s objection:

Q. What is the significance in your experience of a digital scale when found in conjunction with the other items that we’ve discussed?

A.  It’s used for the weighing and trafficking, delivery of narcotics.

The testimony that Appellant objects to is merely testimony of a lay expert under rule of evidence 701, rather than expert testimony under rule of evidence 702.  Officer McNutt testified that, in his training and experience, many times when a house is equipped with surveillance cameras, he has found narcotics at the house.  Additionally, he testified that when a digital scale is found at a house, along with over a hundred grams of a “crystal-like material” and numerous baggies, the digital scale is generally used for the weighing, trafficking and delivery of narcotics.  Thus, the substance of his testimony related to opinions, beliefs, or inferences drawn from his own experiences or observations, and his testimony was admissible under evidence rule 701.  
See
 
id.  
Accordingly, the State was not required to disclose Officer McNutt as an expert under code of criminal procedure article 39.14(b).  
See
 
Tex. Code Crim. Proc. Ann.
 art. 39.14(b).  We hold that the trial court did not abuse its discretion in permitting Officer McNutt to testify regarding these statements.  We overrule Appellant’s third point. 

MOTION FOR NEW TRIAL

In his fourth and fifth points, Appellant asserts that the trial court erred in denying his motion for new trial when he proved that evidence had been withheld from him and that he was denied the right to confront the witnesses against him by the failure of the State to provide him with the operating procedures of the Tarrant County Auto Theft Task Force.  The State counters that Appellant was not harmed by the tardy discovery of Defendant’s Exhibit 23, and the trial court properly denied his motion for new trial.  Furthermore, the State contends that Appellant’s right of confrontation has not been infringed upon because the task force manual was not relevant and would have provided only impeachment on a collateral matter.  

On May 13, 2004, Appellant filed a motion for new trial, and the trial court held a hearing on the motion on June 23, 2005.  At the hearing, Appellant offered Defendant’s Exhibit 23, a copy of the Tarrant County Auto Theft Task Force Standard Operating Procedures, and it was admitted by the court without objection.  Appellant asserted that Defendant’s Exhibit 23 was something he subpoenaed during trial, and that while the jury was out deliberating, he observed that it was on the State’s counsel table.  In response to his request, the State permitted Appellant to look at the document.  Appellant informed the trial court that he did not believe that the State was aware that the exhibit had been produced in response to a subpoena, and he did not assert that the State intentionally withheld the document from him.  Appellant explained that, had he been in possession of Defendant’s Exhibit 23 at the time of trial, he would have used it to cross-examine Detective Pearson and that it would have been helpful to the jury in evaluating his testimony.  The State responded that the evidence was not relevant, and even if the operating procedures of the Task Force were relevant, they were not legally binding on the officers in the case.  The trial court denied the motion for new trial.  At trial, Officer Pearson of the Tarrant County Auto Theft Task Force testified that he was not aware of any operating procedures of the task force. 

1. Standard of Review

 An appellate court reviews a trial court's denial of a motion for new trial under the “abuse of discretion” standard.  
Charles v. State
, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).   We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable.  
Id.
  We must view the evidence in the light most favorable to the trial court’s ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party.  
Id.
  Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court’s ruling.  
Id.

2.  Applicable Law

A defendant is entitled to a new trial based on newly discovered eivdence when the defendant shows that (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial, (2) the movant’s failure to discover or obtain the evidence was not due to a lack of diligence (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching, and (4) the new evidence is probably true and will probably bring about a different result on another trial.  
Keeter v. State
, 74 S.W.3d 31, 36-7 (Tex. Crim. App. 2002).  

The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him.  
U.S. Const
 amend IV;  
Lopez v. State
, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).  Confrontation means more than being allowed to confront the witness physically.  
Id.
  A primary interest secured by the Confrontation Clause is the right of cross-examination.  
Id.
  Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant’s right to cross-examine and the risk factors associated with admission of the evidence.  
Id.
 

As a general rule, a party is not entitled to impeach a witness on a collateral or immaterial matter.  
Ramirez v. State
, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990); 
Poole v. State
, 974 S.W.2d 892, 905 (Tex. App.—Austin 1998, pet. ref’d).  A collateral matter is one which seeks only to test a witness’s general credibility or relates to facts irrelevant to issues at trial.  
Keller v. State
, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984).  Evidence is relevant when it has a tendency to make the existence of any fact that is of consequence to the determination of the appellant’s guilt more probable or less probable than it would be without the evidence.  
Tex. R. Evid.
 401.

3.  Discussion
 

Appellant argues that because Detective Pearson testified under oath that he did not know the name of the person who provided the information to him that led to the investigation of Appellant, did not know the charge for which that person was held, and did not make any promises to the informant, Pearson failed to “establish” the identity of the informant as required by both the Auto Theft Task Force and the Policies of the Narcotics Intelligence Task Force.  The trial court had previously determined that the issue of the confidential informant’s identity was irrelevant to the determination of Appellant’s guilt.  The additional evidence regarding the procedures that officers should employ when dealing with a confidential informant would be a collateral matter, because it relates to an issue that is irrelevant at trial.  The issue of whether the officers employed the procedure outlined in the Task Force Manual is not relevant to the determination of Appellant’s guilt.  
See 
Tex. R. Evid.
 401.  

With regard to Appellant’s Confrontation Clause complaint, the trial court has broad discretion to impose reasonable limitations on cross examination, including when the cross examination deals with collateral evidence or evidence that would lead to confusion of the jury.  
Lopez
, 18 S.W.3d at 222.  During trial, Appellant questioned Detective Pearson about whether the Auto Theft Task Force had procedures in effect relating to recording the names of people who provide the entity with information, and the trial court concluded that the standard operating procedures regarding confidential informants were irrelevant to the case at bar.

Appellant also argues that this case should be reversed because the newly discovered evidence diminishes the credibility of Detective Pearson’s testimony, as Detective Pearson “gave false testimony” and the requested documents would have demonstrated his false testimony.  Thus, his argument is that the evidence would diminish Detective Pearson’s testimony, which is exactly the purpose of impeachment evidence.  The newly discovered evidence is, therefore, insufficient to warrant a new trial.  
See Blackmon v. State
, 926 S.W.2d 399, 403 (Tex. App.—Waco 1996, pet. ref’d) (holding that trial court did not abuse its discretion in denying defendant’s motion for new trial where newly discovered evidence was merely impeaching hearsay evidence). Accordingly, we hold that the trial court did not abuse its discretion by denying Appellant’s motion for new trial.  
See id.

JURY CHARGE

In his eighth and ninth points, Appellant contends that the trial court erred in failing to charge the jury on the text of the Fourth and Fifth Amendments to the United States Constitution.  If a party provides no argument or legal authority to support its position, the appellate court may properly overrule the issue or point as inadequately briefed.  
Tex. R. App. P.
 38.1(h); 
Tong v. State,
 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 1053 (2001);
 Mosley,
 983 S.W.2d at 256.  In his briefing, Appellant does not cite a single legal authority for the proposition that the text of these two amendments should have been included in the jury charge.  Accordingly, we overrule his eighth and ninth points as inadequately briefed.  
See
  
Tong,
 25 S.W.3d at 710.

CONCLUSION

Having overruled Appellant’s nine points, we affirm the trial

court’s judgment. 

DIXON W. HOLMAN

JUSTICE

PANEL B:  HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 8, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:  The underlined portions of the consent to search form indicate blank spaces on the form, and the information contained in the blanks was written in.

3:
Because the trial court’s ruling is correct on this theory of law, we will not address Appellant’s contention that Watson did not have the authority to give the officers consent to search the house.  
Tex. R. App. P.
 47.1; 
endariz
, 123 S.W.3d at 404.