COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-147-CR

 

 

RAUL CORTEZ                                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 297TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Raul Cortez appeals
his conviction for possession of a controlled substance, namely
methamphetamine, of four grams or more but less than 200 grams, with the intent
to deliver.  After the jury convicted
Appellant of the charged offense, the judge sentenced Appellant to 35 years= confinement.  In nine points,
Appellant complains that the trial court erred by admitting evidence obtained
pursuant to a warrantless search, by finding that the consent to search was valid,
by admitting expert testimony that had not been disclosed in response to a
discovery request, by failing to grant a new trial, and by failing to give a
jury charge on the Fourth and Fifth Amendments. 
He also asserts that he was denied his right of confrontation and that
the evidence was legally and factually insufficient to support his
conviction.  We affirm.

FACTUAL BACKGROUND

On March 5, 2004, an inmate
informed Detective Daniel Pearson of the Tarrant County Auto Theft Task Force
that a possible stolen motorcycle was located at 6715 South Creek Drive in Fort
Worth, Texas.  The informant told him the
motorcycle was yellow and that the house was equipped with surveillance
cameras.  Two uniformed officers of the
Fort Worth Police Department and a sergeant of the Task Force accompanied
Detective Pearson to the location.  The
officers saw a motorcycle matching the description given to Detective Pearson.








Detective Pearson stated that
as soon as he arrived at the house, he was met outside by a woman named Brandi
Watson.  She indicated that someone was
inside the house.  Two uniformed officers
went to the front door, and through the open door, the officers saw an assault
rifle leaning against the fireplace. 
Thus, according to Officer Fineman, the officers performed a protective
sweep for officer safety.  Watson stepped
outside the house.  While conducting the
protective sweep, the officers encountered Appellant and escorted him out of
the house.  The officers told Watson and
Appellant that they had information that the motorcycle was possibly
stolen.  Appellant stated that the
motorcycle belonged to him, and the officers ran a check of the motorcycle=s registration based on a search of the vehicle identification number
that reflected that the motorcycle was registered in Appellant=s name.  The officers also ran a
separate check of the engine number, and that check indicated that the engine
number was from a motorcycle that was reported as stolen.

According to the officers,
Watson and Appellant both signed a consent-to-search form.  Inside the garage, officers found the frame
to the stolen motorcycle.  After the
consent form was signed, the officers searched the house.  Inside the house, officers found contraband,
including methamphetamine and a digital scale.

SUFFICIENCY OF THE EVIDENCE

In his sixth and seventh
points, Appellant contends that the evidence is legally and factually
insufficient to support his conviction.

 








1. Standards of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 

In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

2. Applicable Law








Appellant was charged by
indictment for possession of a controlled substance, namely methamphetamine, of
four grams or more but less than 200 grams, with the intent to deliver.  To convict a defendant of possession of a
controlled substance, the State must prove that the defendant exercised care,
custody, control, or management over the drugs and that he knew he possessed a
controlled substance.  Brown v. State,
911 S.W.2d 744, 747 (Tex. Crim. App. 1995). 
Intent to deliver may be proven by circumstantial evidence, including
evidence surrounding its possession.  Guy
v. State, 160 S.W.3d 606, 615 (Tex. App.CFort Worth 2005, pet. ref=d).  Additionally, intent to
deliver may be inferred from the quantity of drugs possessed and from the
manner in which they are packaged.  Id.

3. Sufficiency of the
Evidence

Appellant essentially argues
that the evidence is legally insufficient to support his conviction because of
a lack of affirmative links to the contraband, as fingerprint testing was not
performed on the items seized from his house. 
The Aaffirmative
links@ rule is really a shorthand expression to identify what must be proven
in a prosecution for the possession of illegal drugs.  Brown, 911 S.W.2d at 747.  The accused must have exercised actual care,
control, or custody of the substance, as well as have been conscious of his
connection with it and have known what it was. 
Id.  Evidence which
affirmatively links him to the substance suffices for proof that he possessed
it knowingly.  Id.  It does not really matter whether this
evidence is direct or circumstantial.  Id.








The factors to be considered
in establishing affirmative links include the following: (1) the defendant=s presence when the search was executed, (2) whether the contraband
was in plain view, (3) the defendant=s proximity to and the accessibility of the narcotic, (4) whether the
defendant was under the influence of narcotics when arrested, (5) whether the
defendant possessed other contraband when arrested, (6) whether the defendant
made incriminating statements when arrested, (7) the presence of odor of the
contraband, (8) the presence of other contraband or drug paraphernalia, (9) the
defendant=s ownership
or right to possession of the place where the controlled substance was found,
and (12) whether the place the drugs were found was enclosed. Harris v.
State, 173 S.W.3d 575, 579 (Tex. App.CFort Worth 2005, no pet.); Hyett v. State, 58 S.W.3d 826, 830
(Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d); Jones v. State, 963 S.W.2d 826, 830 (Tex. App.CTexarkana 1998, pet. ref=d); Chavez v. State, 769 S.W.2d 284, 288‑89 (Tex. App.CHouston [1st Dist.] 1989, pet. ref=d).  Another factor to consider
is whether the contraband is found in an area that contains men=s clothing if the defendant is a male. 
Robles v. State, 104 S.W.3d 649, 651 (Tex. App.CHouston [1st Dist.] 2003, no pet.). 
It is not the number of affirmative links present that is important, but
rather the Alogical
force@ that they create to prove that the defendant committed the
crime.  Nhem v. State, 129 S.W.3d
696, 699‑700 (Tex. App.CHouston [1st Dist.] 2004, no pet.). 
The link, however, need not be so strong that it excludes every other
reasonable hypothesis except the defendant=s guilt.  Brown, 911
S.W.2d at 748.








Appellant contends that the
fact that Sandra Reyna testified that he spent the night away from the house
the evening prior to the search is Acompelling.@ We
disagree.  Reyna testified that Appellant
lived at the address on South Creek in Fort Worth.  The officers found a utility bill and a bill
from the City of Fort Worth addressed to Appellant at 6715 South Creek, where
the search occurred.  Officers saw
surveillance cameras outside the house that were connected to video monitors
inside the house.  Appellant was inside
the house when the officers went to that location and was present when officers
conducted a search of the residence. 
Next to a safe containing plastic baggies, officers found men=s clothing and an envelope addressed to Appellant at the South Creek
address. 

Officers found medium-sized
and smaller-sized baggies in the house. 
The officers saw a digital scale in plain view.  Officer Thomas McNutt testified that a
digital scale, when found in connection with narcotics and plastic baggies, is
used for the weighing, trafficking and delivery of narcotics.  Additionally, officers found a large amount
of methamphetamineC106.23 gramsCin the house.  Officer McNutt
testified that the amount of methamphetamine that was confiscated was more than
the typical street user would purchase.








Though the officers did not
request that the items confiscated in the house be tested for fingerprints,
sufficient evidence affirmatively links Appellant to the methamphetamine.  Accordingly, we conclude that the evidence,
when viewed in the light most favorable to the verdict, supports a
determination beyond a reasonable doubt that Appellant was in possession of the
methamphetamine and that he had an intent to deliver it.  Additionally, when viewed neutrally, the evidence
is not so obviously weak or so greatly outweighed by contrary proof that it
would not support the finding of guilty beyond a reasonable doubt.  Accordingly, we overrule Appellant=s sixth and seventh points. 

SUPPRESSION OF EVIDENCE

In his first and second
points, Appellant contends that the trial court erred in denying his motion to
suppress because the evidence was seized in violation of the Fourth Amendment
to the United States Constitution and the consent to search was not validly and
voluntarily given.  Appellant argues that
Watson did not have the authority to consent to the search of the residence,
that the signature purported to be his on the consent form is not his
signature, and that he did not consent to the search orally or in writing. 

 

 

 

 








1. Standard of Review

We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Endariz v. State, 123
S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

To suppress evidence because
of an alleged Fourth Amendment violation, the defendant bears the initial
burden of producing evidence that rebuts the presumption of proper police
conduct.  Ford v. State, 158
S.W.3d 488, 492 (Tex. Crim. App. 2005). 
A defendant satisfies this burden by establishing that a search or
seizure occurred without a warrant.  Id.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id.








Whether a search is
reasonable is a question of law that we review de novo.  Kothe v. State, 152 S.W.3d 54, 62
(Tex. Crim. App. 2004).  Reasonableness
is measured by examining the totality of the circumstances.  Id. at 63.  It requires a balancing of the public
interest and the individual=s right to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the Aspecifically
defined and well-established@ exceptions to the warrant requirement.  McGee v. State, 105 S.W.3d 609, 615
(Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003); see Best,
118 S.W.3d at 862. 

2.  The Trial Court=s Ruling

At the conclusion of the
suppression hearing, the trial court noted that the testimony of the searching
officers conflicted with Appellant=s testimony.  After reviewing
the evidence, the court determined that Appellant consented to the search both
orally and in writing.  The court also
found that the consent was free and voluntary and that it was not revoked.  Therefore, the trial court overruled
Appellant=s motion to
suppress.

3. Consent








Consent to search is one of
the well‑established exceptions to the constitutional requirements of
both a warrant and probable cause, as long as the consent is voluntary.  Schneckloth v. Bustamonte, 412 U.S.
218, 219, 93 S. Ct. 2041, 2043‑44 (1973); State v. Ibarra, 953
S.W.2d 242, 243 (Tex. Crim. App.1997) The federal constitution only requires
the State to prove the voluntariness of consent by a preponderance of the
evidence; the Texas Constitution requires the State to show by clear and
convincing evidence that the consent was freely given.  Carmouche, 10 S.W.3d at 331.  Voluntariness is to be determined from all
the circumstances surrounding the consent.  Schneckloth, 412 U.S. at 248‑49, 93
S. Ct. at 2059.  Testimony by law
enforcement officers that no coercion was involved in obtaining the consent is
evidence of the consent=s voluntary
nature. Martinez v. State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); Hunter
v. State, 102 S.W.3d 306, 311 (Tex. App.CFort Worth 2003, no pet.). 

At the suppression hearing,
Officer McNutt testified that he went to 6715 South Creek in Fort Worth, Texas
to assist Detective Pearson with an investigation at that residence.  When he arrived, he met Appellant, Watson,
Detective Pearson, other Task Force officers, and two uniformed Fort Worth
police officers.  Officer McNutt
testified that he spoke with Appellant and Watson and asked them for consent to
search.  Officer McNutt testified that
Watson and Appellant both informed him that they lived at the house. According
to Officer McNutt, they voluntarily signed the consent to search form.

The consent to search form
reads as follows:








I, Watson,
Brandi,[2]
have been informed by the Texas Peace Officer who has served me with this
document, that I have the right to refuse the officer, or any other officer,
permission to conduct a search of the premises mentioned in this document,
which are under my control.  I understand
that should I refuse to consent, I have the right to be free from a search of
these premises by a Texas Peace Officer, in the absence of a search
warrant.  I understand that these rights
are afforded to me under both the Constitution of the State of Texas and by the
United States Constitution.  Nonetheless,
I HEREBY VOLUNTARILY WAIVE AND SURRENDER THESE RIGHTS, AND GIVE MY PERMISSION
TO THE FOLLOWING OFFICER, TW McNutt #2857, ALONG WITH ANY ASSISTING
OFFICERS TO CONDUCT A COMPLETE SEARCH OF: THE PREMISES, BUILDINGS, AND
CURTILAGE, LOCATED AT 6715 South Creek. 


 

Officer McNutt testified that
he filled in the blanks for his name and the address of the premises.  He testified that Watson filled her name in
the top blank of the form.  Watson signed
the consent-to-search form in two places. 
Appellant=s purported
signature appears underneath her signature in one place on the form and next to
her signature in another location on the form. 
Officer McNutt noted that Appellant had an unusual signature, but he
testified that when he asked Appellant about his signature, Appellant informed
him that was how he signed things.








At the suppression hearing,
Appellant denied signing the document. 
He denied that his initials were present on the consent to search form,
and he testified that his signature would be his full name.  He further denied giving the officers either
oral or written consent to search. 
Appellant argues that, because the consent form begins with a
declarative statement, AI Watson,
Brandi,A that does not contain his name, the statement is not his; thus, his
signature therein would have no legal effect. 
Officer McNutt testified that Appellant and Watson both gave oral
consent to search the premises and that he saw them both sign the
document.  Detective Pearson reviewed his
report and stated that Appellant and Watson both signed the consent-to-search
form and gave the officers permission to search the residence.

Officer McNutt testified that
he did not make any promises or threats to either Watson or Appellant in order
to induce them into signing the consent form. 
Detective Pearson testified that he did not threaten anyone or make any
promises to induce Watson or Appellant to sign the consent form, nor did he
hear Officer McNutt make any promises for their signatures.








The issue of whether
Appellant freely and voluntarily gave consent to search the house depends on
the credibility and demeanor of the witnesses. 
It is clear from the trial court=s findings of fact that the trial court chose to believe the testimony
of Officer McNutt and Detective Pearson over Appellant=s testimony.  Giving almost
total deference to the trial court=s determination of historical facts and application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor, we determine
that Appellant freely and voluntarily gave consent to search the house, in both
written and oral form.[3]  See Johnson, 68 S.W.3d at 652‑53.  Accordingly, we overrule Appellant=s first and second points.  

EXPERT TESTIMONY

In his third point, Appellant
asserts that the trial court erred in permitting expert testimony concerning
drug trafficking when it was not disclosed in response to a discovery
request.  Appellant complains that the
trial court allowed Officer McNutt to testify as to the significance of the
video surveillance cameras, the significance of a digital scale, the street
price of narcotics, and the packaging of narcotics.  The State responds that the complained-of
testimony did not involve expert opinions. 


1.  Standard of Review

The admissibility of evidence
is within the discretion of the trial court and will not be reversed absent an
abuse of discretion.  Osbourn v. State,
92 S.W.3d 531, 537 (Tex. Crim. App. 2002). 
If there is evidence supporting the trial court=s decision to admit evidence, there is no abuse, and the appellate
court must defer to that decision.  Id.
at 538.

2. Preservation of Error








To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  

An objection must be made as
soon as the basis for the objection becomes apparent.  Tex.
R. Evid. 103(a)(1); Lagrone v. State, 942 S.W.2d 602, 618 (Tex.
Crim. App.), cert. denied, 522 U.S. 917 (1997); Polk v. State,
729 S.W.2d 749, 753 (Tex. Crim. App. 1987).   
If a defendant fails to object until after an objectionable question has
been asked and answered, and he can show no legitimate reason to justify the
delay, his objection is untimely and error is waived.  Lagrone, 942 S.W.2d  at 618. 

Regarding the street price of
narcotics, the State elicited the following testimony: 

Q.  Are you acquainted with the price of B the
going price of narcotics on the street?

 

A.  Yes.             

 

Q.  Assuming somebody wanted to sell a hundred
grams of methamphetamine, what is the approximate value of that today? 

 

A.  Basically it=s
approximately a hundred dollars a gram.    








Q.  So ten thousand dollars?

 

A.  Yes.                                     

 

[DEFENSE COUNSEL]: Your Honor, we=re
gonna object to this testimony as calling for an expert opinion on the part of
the witness in violation of the Court=s rulings concerning expert
testimony and expert opinions and therefore we would object to the introduction
of that evidence.                       

 

[THE
COURT]:  I am going to overrule that
objection. 

Here, Appellant failed to
make the objection as soon as the basis for objecting had become clear.  See id.  Appellant did not object until after the
question had been asked and answered; thus, the objection was untimely and
Appellant failed to preserve error on these grounds.  See id. 

Appellant also asserts that
the following testimony regarding the packaging of narcotics involves expert
testimony:

Q.  Now, when we talk about packaging, what sort
of packaging B as
far as a retail level where a user=s buying from a dealer, what
sort of packaging does that methamphetamine usually come in?

 

A.  You=re gonna get the half-inch by
half-inch, one by ones, two by twos, the little small packaging Ziplock little
baggiesB

 

Q.  And is that B

 

A.  With different colors. 

 

Q.  Okay. And the Ziplock baggies that you
recovered at the scene, are those consistent with baggies that are used in the
methamphetamine trade? 

 








A.  It is consistent for what I=ve seen from my experience and dealing. 

Appellant never lodged an
objection to Officer McNutt=s testimony about the packaging of narcotics.  Therefore, Appellant has failed to preserve
error on these grounds.  See Tex. R. App. P. 33.1(a)(1).

3.  Discussion

Appellant acknowledged that
the State permitted him to review the State=s file through an Aopen file@
policy.  Appellant filed a motion for
discovery before trial, and a hearing on the discovery motion was held.  The State represented that the only expert it
anticipated calling was the lab chemist. 

In pertinent part, code of
criminal procedure article 39.14 provides: 

On motion of a party and on
notice to the other parties, the court in which an action is pending may order
one or more of the other parties to disclose to the party making the motion the
name and address of each person the other party may use at trial to present
evidence under Rules 702, 703, and 705, Texas Rules of Evidence.








Tex. Code Crim. Proc.
Ann. art. 39.14(b) (Vernon Supp. 2005).  Both lay and expert witnesses can offer
opinion testimony.   Rule of evidence 701
covers the more traditional witness, one who Awitnessed@ or
participated in the events about which he or she is testifying, while Rule 702
allows for a witness who was brought in as an expert to testify.  See Tex.
R. Evid. 701, 702.  When
conducting an evaluation under rule of evidence 701, the trial court must
decide (1) whether the opinion is rationally based on perceptions of the
witness, and (2) whether it is helpful to a clear understanding of the witness=s testimony or to determine of a fact in issue.  Fairow v. State, 943 S.W.2d 895, 897 n.4
(Tex. Crim. App. 1997); see Tex. R.
Evid.  701. 

As a general rule,
observations which do not require significant expertise to interpret and which
are not based on a scientific theory can be admitted as lay opinions if the
requirements of Rule 701 are met.  Osbourn,
92 S.W.3d at 537.  Perceptions refer to a
witness=s interpretation of information acquired through his or her own senses
or experiences at the time of the event; for example, things the witness saw,
heard, smelled, touched, felt, or tasted. 
Id.   Additionally, even
events not normally encountered by most people in everyday life do not
necessarily require the testimony of an expert. 
Id.  Since Rule 701 requires
the testimony to be based on the witness=s perception, it is necessary that the witness personally observed or
experienced the events about which he or she is testifying.  Id. 
Thus, the witness=s testimony
can include opinions, beliefs, or inferences as long as they are drawn from his
or her own experiences or observations.  Id.








Appellant complains about the
trial court=s admission
of testimony regarding the significance of the video surveillance cameras and
the digital scale that officers found at his residence.  After Officer McNutt identified two
photographs depicting the video surveillance cameras, the following discussion
occurred:

Q.  Now, in your experience involving narcotics
investigations, what=s the
significance of surveillance cameras on the outside of a residence?

 

[DEFENSE COUNSEL]: Your Honor, I=m
going to object to the extent that counsel is seeking to elicit expert opinions
from this witness concerning these matters for the reason that prior notice of
such intent has not been given. 

 

THE COURT: All right.  Well, I=ll permit him to state a lay
opinion at this time. 

 

[DEFENSE COUNSEL]: Would my objection be
overruled then, Your Honor?

 

THE COURT: Well, to the extent that your
objection to his testimony as an expert, I=ll sustain that, but he may
testify as to his lay opinion.  So, I=ll
permit that testimony.  

 

After
allowing Appellant to clarify his objection and hearing the State=s
response, the trial court permitted the following:

 

Q.  How manyBin your eight years, how many
times would you say that you=ve found narcotics at a home
and there have been surveillance cameras at the house?

 

A.  I can=t give you a number, but
many.

 

Later, after Officer McNutt
identified the State=s exhibit
depicting the digital scale that officers found at Appellant=s house, the trial court permitted the following testimony over
Appellant=s objection:








Q.
What is the significance in your experience of a digital scale when found in
conjunction with the other items that we=ve discussed?

 

A.  It=s used for the weighing and trafficking, delivery of narcotics.

The testimony that Appellant objects to is merely
testimony of a lay expert under rule of evidence 701, rather than expert
testimony under rule of evidence 702. 
Officer McNutt testified that, in his training and experience, many
times when a house is equipped with surveillance cameras, he has found
narcotics at the house.  Additionally, he
testified that when a digital scale is found at a house, along with over a
hundred grams of a Acrystal-like
material@ and numerous baggies, the digital scale is generally used for the
weighing, trafficking and delivery of narcotics.  Thus, the substance of his testimony related
to opinions, beliefs, or inferences drawn from his own experiences or
observations, and his testimony was admissible under evidence rule 701.  See id.  Accordingly, the State was not required
to disclose Officer McNutt as an expert under code of criminal procedure
article 39.14(b).  See Tex. Code Crim. Proc. Ann. art.
39.14(b).  We hold that the trial court
did not abuse its discretion in permitting Officer McNutt to testify regarding
these statements.  We overrule Appellant=s third point. 

 

 








MOTION FOR NEW TRIAL

In his fourth and fifth
points, Appellant asserts that the trial court erred in denying his motion for
new trial when he proved that evidence had been withheld from him and that he
was denied the right to confront the witnesses against him by the failure of
the State to provide him with the operating procedures of the Tarrant County
Auto Theft Task Force.  The State
counters that Appellant was not harmed by the tardy discovery of Defendant=s Exhibit 23, and the trial court properly denied his motion for new
trial.  Furthermore, the State contends
that Appellant=s right of
confrontation has not been infringed upon because the task force manual was not
relevant and would have provided only impeachment on a collateral matter.  








On May 13, 2004, Appellant
filed a motion for new trial, and the trial court held a hearing on the motion
on June 23, 2005.  At the hearing,
Appellant offered Defendant=s Exhibit 23, a copy of the Tarrant County Auto Theft Task Force
Standard Operating Procedures, and it was admitted by the court without
objection.  Appellant asserted that
Defendant=s Exhibit 23
was something he subpoenaed during trial, and that while the jury was out
deliberating, he observed that it was on the State=s counsel table.  In response to
his request, the State permitted Appellant to look at the document.  Appellant informed the trial court that he
did not believe that the State was aware that the exhibit had been produced in
response to a subpoena, and he did not assert that the State intentionally
withheld the document from him. 
Appellant explained that, had he been in possession of Defendant=s Exhibit 23 at the time of trial, he would have used it to
cross-examine Detective Pearson and that it would have been helpful to the jury
in evaluating his testimony.  The State
responded that the evidence was not relevant, and even if the operating procedures
of the Task Force were relevant, they were not legally binding on the officers
in the case.  The trial court denied the
motion for new trial.  At trial, Officer
Pearson of the Tarrant County Auto Theft Task Force testified that he was not
aware of any operating procedures of the task force. 

1. Standard of Review








 An appellate court reviews a trial court's
denial of a motion for new trial under the Aabuse of discretion@ standard.  Charles v. State,
146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  
We do not substitute our judgment for that of the trial court, but
rather we decide whether the trial court's decision was arbitrary or
unreasonable.  Id.  We must view the evidence in the light most
favorable to the trial court=s ruling and presume that all reasonable factual findings that could
have been made against the losing party were made against that losing
party.  Id.  Thus, a trial court abuses its discretion in denying
a motion for new trial only when no reasonable view of the record could support
the trial court=s
ruling.  Id.

2.  Applicable Law

A defendant is entitled to a
new trial based on newly discovered eivdence when the defendant shows that (1)
the newly discovered evidence was unknown or unavailable to the movant at the
time of his trial, (2) the movant=s failure to discover or obtain the evidence was not due to a lack of
diligence (3) the new evidence is admissible and is not merely cumulative,
corroborative, collateral, or impeaching, and (4) the new evidence is probably
true and will probably bring about a different result on another trial.  Keeter v. State, 74 S.W.3d 31, 36-7 (Tex.
Crim. App. 2002).  

The Sixth Amendment to the
Constitution guarantees the right of an accused in a criminal prosecution to be
confronted with the witnesses against him. 
U.S. Const amend IV;  Lopez v. State, 18 S.W.3d 220, 222
(Tex. Crim. App. 2000).  Confrontation
means more than being allowed to confront the witness physically.  Id. 
A primary interest secured by the Confrontation Clause is the right of
cross‑examination.  Id.  Each Confrontation Clause issue must be
weighed on a case‑by‑case basis, carefully taking into account the
defendant=s right to
cross‑examine and the risk factors associated with admission of the
evidence.  Id. 








As a general rule, a party is
not entitled to impeach a witness on a collateral or immaterial matter.  Ramirez v. State, 802 S.W.2d 674, 675
(Tex. Crim. App. 1990); Poole v. State, 974 S.W.2d 892, 905 (Tex. App.CAustin 1998, pet. ref=d).  A collateral matter is one
which seeks only to test a witness=s general credibility or relates to facts irrelevant to issues at
trial.  Keller v. State, 662
S.W.2d 362, 365 (Tex. Crim. App. 1984). 
Evidence is relevant when it has a tendency to make the existence of any
fact that is of consequence to the determination of the appellant=s guilt more probable or less probable than it would be without the
evidence.  Tex. R. Evid. 401.

3.  Discussion 








Appellant argues that because
Detective Pearson testified under oath that he did not know the name of the
person who provided the information to him that led to the investigation of
Appellant, did not know the charge for which that person was held, and did not
make any promises to the informant, Pearson failed to Aestablish@ the
identity of the informant as required by both the Auto Theft Task Force and the
Policies of the Narcotics Intelligence Task Force.  The trial court had previously determined
that the issue of the confidential informant=s identity was irrelevant to the determination of Appellant=s guilt.  The additional
evidence regarding the procedures that officers should employ when dealing with
a confidential informant would be a collateral matter, because it relates to an
issue that is irrelevant at trial.  The
issue of whether the officers employed the procedure outlined in the Task Force
Manual is not relevant to the determination of Appellant=s guilt.  See Tex. R. Evid. 401.  

With regard to Appellant=s Confrontation Clause complaint, the trial court has broad discretion
to impose reasonable limitations on cross examination, including when the cross
examination deals with collateral evidence or evidence that would lead to
confusion of the jury.  Lopez, 18
S.W.3d at 222.  During trial, Appellant
questioned Detective Pearson about whether the Auto Theft Task Force had
procedures in effect relating to recording the names of people who provide the
entity with information, and the trial court concluded that the standard
operating procedures regarding confidential informants were irrelevant to the
case at bar.








Appellant also argues that
this case should be reversed because the newly discovered evidence diminishes
the credibility of Detective Pearson=s testimony, as Detective Pearson Agave false testimony@ and the requested documents would have demonstrated his false
testimony.  Thus, his argument is that
the evidence would diminish Detective Pearson=s testimony, which is exactly the purpose of impeachment
evidence.  The newly discovered evidence
is, therefore, insufficient to warrant a new trial.  See Blackmon v. State, 926 S.W.2d 399,
403 (Tex. App.CWaco 1996,
pet. ref=d) (holding that trial court did not abuse its discretion in denying
defendant=s motion for
new trial where newly discovered evidence was merely impeaching hearsay
evidence). Accordingly, we hold that the trial court did not abuse its
discretion by denying Appellant=s motion for new trial.  See
id.

JURY CHARGE

In his eighth and ninth
points, Appellant contends that the trial court erred in failing to charge the
jury on the text of the Fourth and Fifth Amendments to the United States
Constitution.  If a party provides no argument
or legal authority to support its position, the appellate court may properly
overrule the issue or point as inadequately briefed.  Tex.
R. App. P. 38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim.
App. 2000), cert. denied, 532 U.S. 1053 (2001); Mosley, 983
S.W.2d at 256.  In his briefing,
Appellant does not cite a single legal authority for the proposition that the
text of these two amendments should have been included in the jury charge.  Accordingly, we overrule his eighth and ninth
points as inadequately briefed.  See  Tong, 25 S.W.3d at 710.

 

 

 

 

 

 








CONCLUSION

Having overruled Appellant=s nine points, we affirm the trial

court=s judgment. 

 

DIXON
W. HOLMAN

JUSTICE

 

PANEL B:  HOLMAN, DAUPHINOT, and GARDNER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 8, 2006











[1]See Tex. R. App. P. 47.4.





[2]  The underlined portions of the consent to
search form indicate blank spaces on the form, and the information contained in
the blanks was written in.





[3]Because
the trial court=s
ruling is correct on this theory of law, we will not address Appellant=s
contention that Watson did not have the authority to give the officers consent
to search the house.  Tex. R. App. P. 47.1; endariz,
123 S.W.3d at 404.